Frederick M. MARINE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Originally Submitted Following
Oral Argument: June 19, 1990.

Rehearing En Banc: Oct. 3, 1990.

Resubmitted Following Supplemental
Briefing: Oct. 29, 1991.

Decision En Banc (Remanded)
(Marine I): May 15, 1992.

Resubmitted Following Oral
Argument on Return from
Remand: Jan. 12, 1993.

Decided: April 14, 1993.

Order Denying Reargument May 14, 1993.

Bernard J. O'Donnell (argued), and Brian J. Bartley, Asst. Public Defenders, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Chief of Appeals Div. (argued), and Stephen M. Walther, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before HORSEY, MOORE, WALSH and HOLLAND, JJ., and ALLEN, Chancellor,[1] constituting the Court En Banc.

HORSEY, Justice:

This case is again before us on return from remand to Superior Court, following this Court's decision and mandate in *Marine v. State*, Del.Supr., 607 A.2d 1185 (1992) (hereafter *"Marine I "*.) In *Marine I*, decided May 15, 1992, we vacated the judgment of the Superior Court for the purpose of remanding the case to Superior Court to grant Marine "the reverse amenability hearing he was entitled to" and had not received in 1988. *Id.* at 1212. Because we found Superior Court to have "erred in its application of 10 *Del.C.* § 939(b), we [did] not reach the correctness of its result" in declining to find Marine amenable to the processes of Family Court. *Id.*[2]

On remand, Superior Court, in September 1992, reconsidered the record evidence presented at the original reverse amenability hearing[3] and applying the law to the facts concluded that Marine's application in 1988 for transfer of the case to the Family Court should have been granted. Superior Court, in a 14–page unreported memorandum opinion dated September 29, 1992, held:

> After a careful review of the evidence and all of the circumstances surrounding the acts charged, the Court concludes that the State did not have a fair likelihood of convicting Marine of Murder in the First Degree. Because a *prima facie* case on that charge has not been established, the Court determines and reports to the Supreme Court that Marine's application for transfer of this case to the Family Court should have been granted.

*State v. Marine*, Del.Super., No. IK87–12–0847, slip op. at 1, 1992 WL 301993 Ridgely, P.J. (Sept. 29, 1992) (herein *"Marine Mem. Op."*).

**I**

Following return of the case to this Court, the parties, by stipulation and order of this Court, agreed that the issues remaining to be determined on appeal are:

**A. Did the Superior Court apply the correct legal standard in evaluating the three factors to be considered by the Court as required by 10 *Del.C.* § 939(b)(1) through (3)?**

**B. Does the record support the fact finding of the Superior Court?**

---

1. Sitting pursuant to Supreme Court Rules 2(a) and (b) and 4(a) and (d) and Article IV, § 12 of the Delaware Constitution, to fill up the Court *En Banc.*

2. Superior Court, by entry of its order of July 26, 1988, denied Marine's application for transfer of the case to the Family Court. *See Marine I*, 607 A.2d at 1210. Marine was then tried as an adult in Superior Court for murder in the first degree and was convicted of murder in the second degree and sentenced to life in prison. *Id.* at 1188.

3. In *Marine I*, this Court also provided the following direction and guidance to Superior Court in its conduct of the hearing:

 At this hearing, Superior Court will give appropriate consideration to the nature and circumstances of the offense charged in accordance with the principles of *State v. Andersen*, Del.Super., 385 A.2d 738 (1978). However, except for good cause shown, the Superior Court's reconsideration of the matter should

(Stipulation and Order of this Court dated October 19, 1992). This is the Court's decision on those issues following supplemental briefing of the parties and oral argument. The pertinent facts of the case, the prior proceedings in this extended litigation and the previous rulings of this Court are found in *Marine I* and will not be repeated or summarized.

The parties assert that the two issues framed for decision raise mixed questions of fact and law. With regard to issue B, in *Marine I* we stated that, on return of this case from remand, "we will review Superior Court's exercise of its discretion following an appropriate reverse amenability hearing and [we will] determine whether to reinstate Marine's conviction and sentence or to transfer Marine to the Family Court...." *Id.* at 1212; 10 *Del.C.* §§ 937 & 939(b). If Superior Court had found, on remand, that the State did have a fair likelihood of convicting Marine of murder in the first degree, our ultimate standard of review would have been for abuse of discretion. That is because Superior Court, after addressing the first of the statutory factors enumerated in section 939(b),[4] would have been required to consider the two remaining statutory factors of section 939(b) and then balance or weigh its respective findings in reaching its ultimate decision on the application to transfer. However, since the court reached a contrary finding under subsection (1) of section 939(b), essentially a finding of fact, our standard of review on issue B involves solely a question of fact. Only if a trial court's findings of fact are clearly erroneous and justice requires their overturn are we free to make contradictory findings. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972). Issue A, however, raises a question of law; that is, whether Superior Court properly construed and applied section 939(b). As to that issue, our standard of review is to determine whether Superior Court erred in formulating or applying legal precepts. *Moses v. Board of Education,* Del.Supr.,

be limited to the record made before trial and at the first hearing.
The Court understands that the parties further agreed that the court's redetermination of the matter should be based on the 1988 record, without enlargement.

602 A.2d 61, 63 (1991) (quoting *Delaware Alcoholic Beverage Wholesalers, Inc. v. Ayers,* Del.Supr., 504 A.2d 1077, 1081 (1986)). As to an issue of law, our scope of review is plenary. *Fiduciary Trust Co. v. Fiduciary Trust Co.,* Del.Supr., 445 A.2d 927, 936 (1982).

For the reasons which follow, we conclude that both issues A and B must be answered in the affirmative. We find Superior Court to have correctly construed and applied 10 *Del.C.* § 939(b) under the "law of the case" of *Marine I.* We also find that the record fully supports Superior Court's findings that the State did not have a fair likelihood of convicting Marine of murder in the first degree. This ruling is tantamount to a finding by the court that the evidence presented in the hearing, viewed in its totality, is insufficient to establish, *prima facie,* the likelihood of a conviction of Marine of murder in the first degree. *Marine I,* 607 A.2d at 1209, 1212. These findings divest Superior Court of original or continuing jurisdiction over Marine. Since he never should have been tried in Superior Court as an adult, we may not reinstate Marine's previous conviction and sentence by Superior Court, the judgment of which we vacated in *Marine I. Id.* at 1212. This ruling of Superior Court, if made previously, would have subjected Marine to the jurisdiction and processes of Family Court; but Marine is now over nineteen years of age, beyond the statutory jurisdiction of that court. This leaves us with no alternative but to direct Superior Court to vacate Marine's conviction and sentence and to order Marine to be released forthwith by the Department of Corrections.

Marine's release from further incarceration as an adult is necessary as a result of Superior Court's finding in its 1992 reverse amenability hearing that "a *prima facie* case [of murder in the first degree] has not been established...." *Marine Mem. Op.* at 1. This judicial finding may not be

4. *See infra* note 6 for full text of 10 *Del.C.* § 939(b).

demeaned or fairly characterized as a "hypertechnical" finding. It is of constitutional dimension. A section 939 reverse amenability hearing properly conducted in accordance with legislative intent is of critical importance. This is self-evident from the fact that had Marine, after being originally charged by the arresting officers with murder in the second degree, been later indicted for murder in the second degree, rather than murder in the first degree, Family Court would have had, without question, exclusive jurisdiction over Marine to proceed against him as a delinquent.

## II

On appeal, Marine contends that Superior Court, in construing and applying 10 *Del.C.* § 939(b), has applied the correct legal standards in the exercise of its discretion conferred by 10 *Del.C.* § 939(b). Marine also contends that Superior Court has complied with the directives of this Court in *Marine I*, which Marine asserts, and we agree, constitute the "law of the case" in our review of the 1992 reverse amenability hearing.[5] Hence, Marine contends there is no merit to the State's claim that Superior Court committed error of law with respect to issue A. Addressing issue B, Marine contends that we must affirm because Superior Court's ultimate finding, that the State did not have a "fair likelihood" of convicting defendant of the offense of murder in the first degree, is supported by substantial and legally sufficient evidence. Marine argues that this Court may neither

substitute its judgment for that of the trial court nor set aside the court's findings of fact which are supported by competent evidence. *Flamer v. State*, Del.Supr., 585 A.2d 736, 754 (1990); *Albury v. State*, Del. Supr., 551 A.2d 53, 60 (1988).

The State takes a different position on appeal from that taken below with respect to the question of law posed by issue A. The State contends that Superior Court: (1) applied an erroneous standard of review in finding the State's evidence of murder in the first degree to be legally insufficient under section 939(b)(1); (2) committed legal or factual error in its construction and application of 10 *Del.C.* § 939; and (3) committed reversible error in its evidentiary rulings admitting certain expert testimony. We take up these arguments *seriatim*.

### A.

 We first address the State's contention that Superior Court committed legal error by applying the wrong legal standard in its analysis of subsection (1) of section 939(b).[6] The State argues that Superior Court, in considering the first of the section 939(b) statutory factors, that is "the nature of the present offense" factor, applied an erroneous legal standard in determining the sufficiency of the State's evidence that Marine had committed murder in the first degree. The State reiterates its contention below that Superior Court should apply Superior Court Criminal Rule 29[7] in determining the sufficiency of the

---

**5.** The doctrine of "the law of the case" normally requires that matters previously ruled upon by the same court be put to rest. *See Bailey v. State*, Del.Supr., 521 A.2d 1069, 1093 (1987). Previous holdings of an appellate court constitute the law of the case and are conclusive as to litigated issues decided on remand and subsequent appeal. *See Kenton v. Kenton*, Del.Supr., 571 A.2d 778, 784 (1990); *Gamble v. Hoffman*, Mo.Supr., 732 S.W.2d 890, 895 (1987). Thus, in a second appeal of the same action, a court's decision in the first appeal is the law of the case on all questions involved and decided and will not be reconsidered. *Piambino v. Bailey*, 11th Cir., 757 F.2d 1112, 1119 (1985), *cert. denied sub nom., Hoffman v. Sylva*, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986).

**6.** Delaware's so-called reverse amenability statute, 10 *Del.C.* § 939(b), provides:

(b) Upon application of the defendant in any case where the Superior Court has original jurisdiction over a child, the Court may transfer the case to the Family Court for trial

and disposition if, in the opinion of the Court, the interests of justice would be best served by such transfer. Before ordering any such transfer, the Superior Court may hold a hearing at which it may consider evidence as to the following factors and such other factors which, in the judgment of the Court are deemed relevant:

(1) The nature of the present offense and the extent and nature of the defendant's prior record, if any;

(2) The nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any; and

(3) Whether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court.

**7.** Superior Court Criminal Rule 29 provides, in pertinent part, as follows:

**RULE 29. MOTION FOR JUDGMENT OF ACQUITTAL**

(a) **Motion Before Submission to Jury.** Motions for directed verdict are abolished

State's evidence. Applying a Rule 29 standard, the State argues that the State's evidence satisfied subsection (1) of section 939(b), stating:

> ... that there are objective facts before this Court which support an inference that Amanda Hemphill was killed intentionally. These facts include the infliction of blunt force injuries about the head, the choking of Amanda to death, and the dropping of her facedown into a stream.

*Marine Mem. Op.* at 12. Superior Court rejected use of a Rule 29 standard of review as "inappropriate" and foreclosed by the law of the case of *Marine I.* The court stated:

> This Court reads the analysis prescribed on appeal as requiring more than a determination of whether some credible evidence exists tending to prove each element of the offense of Murder in the First Degree. Once the State has come forward with proof-positive evidence, the burden shifts to the defendant to convince the Court that the State does not have a fair likelihood of convicting the defendant of Murder in the First Degree. *Marine, supra* at p. 1211–1212. This inquiry necessarily involves a consideration of the totality of the circumstances and not just the inferences which can arguably be drawn from a portion of the evidence. In this context, a *prima facie* case of Murder in the First Degree is not established if there is not a fair likelihood of Marine being convicted on that charge. The issue here turns upon whether the evidence in its totality shows *prima facie* a conscious object or purpose to cause death as opposed to a reckless state of mind. A person acts recklessly with respect to death when he is aware of and consciously disregards a substantial and unjustifiable risk that

death will result from his conduct. 11 *Del.C.* § 231.

*Marine Mem. Op.* at 13. We affirm.[8]

In *Marine I,* this Court stated that in the analogous "proof positive" hearing held to determine a defendant's right to bail when charged with a capital offense, a defendant prevails if the court "concludes from the evidence that the State does not have a fair likelihood of convicting the accused of the capital offense." *Id.* at 1212 n. 17 (quoting *In re Steigler,* Del.Supr., 250 A.2d 379, 383 (1969)). In *Marine I* we distinguished the process whereby a trial court, in determining whether the State has established a *prima facie* case against an accused sufficient to defeat a motion for judgment of acquittal, only looks at the evidence presented by the State. However, in the context of a reverse amenability hearing, the issue is whether the evidence in its totality (prosecution and defense) demonstrates, *prima facie,* that the State has a substantial likelihood of convicting the accused juvenile as charged. Such an examination of the evidence in its totality is necessary to provide a "judicial counterweight to any perceived prosecutorial charging excess," thereby reconciling the Delaware reverse amenability statute with the state and federal Constitutional guarantees of due process and equal protection. *See Marine I,* 607 A.2d at 1209–1212.

Applying our mandate, Superior Court properly reasoned that "a *prima facie* case of murder in the first degree is not established if there is not a fair likelihood of Marine's being convicted on that charge." *Marine Mem. Op.* at 13. We hold that Superior Court applied the correct legal standard in determining the sufficiency of the evidence.

We take up the State's alternative argument that Superior Court erred in rejecting a Rule 29 standard of review as "too high" or "too stringent" for application to a reverse amenability hearing under section 939(b)(1). On appeal, the State now contends that the proper standard for deter-

---

and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indict-

ment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses....

8. *See infra* section C.

mining the sufficiency of the State's evidence in such a hearing is the standard controlling a state's burden of proof of the commission of an offense in a preliminary hearing. The State, seizing upon a parenthetical statement by this Court in *Blount v. State*, Del.Supr., 511 A.2d 1030 (1986) (a proof positive hearing "amounts to" a preliminary hearing), argues that the State's burden of proof in a section 939 hearing is no greater than the State's burden in a preliminary hearing. *Id.* at 1039.

At oral argument on appeal, however, the State conceded that it had not raised this argument (analogizing a proof positive hearing to a preliminary hearing) [9] before Superior Court. Having failed to do so, the State is foreclosed by Supreme Court Rule 8 from so arguing on appeal. More importantly, the State is equally foreclosed from making this argument by the "law of the case" doctrine of *Marine I*, which Superior Court correctly found to be controlling. *See Bailey v. State*, Del.Supr., 521 A.2d 1069, 1093 (1987); *see also supra* n. 5.

### B.

◾ We turn to the State's remaining contention, posed by issue A: whether Superior Court committed legal or factual error in its construction and application of 10 *Del.C.* § 939. More specifically, the State contends that Superior Court was required to reapply the second and third factors of section 939(b), as it had in its 1988 ruling, notwithstanding the court's finding under subsection (1). The State's argument is

**9.** The record below reveals that on remand the State argued before Superior Court that, "The question presented on remand [is] the relatively narrow one of whether the evidence presented at the amenability hearing was sufficient to establish a *prima facie* case of murder in the first degree." That standard is precisely the one that Superior Court applied in its ruling, after reviewing the totality of the evidence, that "a *prima facie* case [of murder in the first degree] has not been established...." *Marine Mem. Op.* at 1.

**10.** In particular, the State argues that Superior Court "ignored its [1988] findings that there was '[n]o assurance ... that the defendant's antisocial and aggressive behavior can be abated with treatment within the maximum available Family Court jurisdiction,' which had led the court to

based not on statutory construction or legislative intent but on language in *Marine I*, which the State construes as requiring a trial court "to consider and balance all the factors." [10] The State misreads *Marine I.*

In *Marine I* we stated that the trial court erred in its 1988 reverse amenability ruling by focusing "exclusively on the factors contained in section 939(b)(2) and (3), while failing to make any specific findings as to section 939(b)(1)." *Id.* at 1212. The predicate for our finding of error by Superior Court in the 1988 proceeding is the statutory entitlement of a juvenile defendant when "charged with murder in less than the first degree ... to Family Court proceedings in his interest." *Id.* We also held in *Marine I* that judicial examination of the evidentiary justification for trying a juvenile as an adult is a prerequisite for sustaining the constitutionality of the Delaware statutory framework. We stated:

> A defendant charged with murder in less than the first degree is constitutionally entitled to bail. Similarly, a juvenile defendant charged with murder in less than the first degree is statutorily entitled to Family Court proceedings in his interest. *In each situation, a judicial examination of the evidentiary justification for the charging decision is required. See In re Steigler*, 250 A.2d at 379, 383 (1969).

*Id.* at 1212 (emphasis added). Thus, a proper judicial application of the Delaware reverse amenability statute is essential to sustain the legislative scheme against the contention that, in the context of the facts of this case, the proceeding was a denial of Marine's right to equal protection and due process.[11] In *Marine I*, we stated:

> conclude that transfer to the Family Court was 'neither in the interest of society nor the defendant.' Because the Superior Court's latest analysis totally overlooks that factor, the case, at a minimum, must be returned to the Superior Court to expressly consider all of the statutory factors, including society's interest."

**11.** Marine's claim of denial of equal protection and due process was principally based upon the State's arguably unfettered charging authority and ability to secure true bills from a grand jury. We rejected Marine's claim that the Delaware legislative framework denied Marine equal protection and due process, in large part because of the Legislature's adoption in 1971 of a reverse amenability statute, the forerunner of section 939. *See Marine I* at 1209.

Moreover, the Legislature's 1971 enactment of a reverse amenability process eliminates the potential for arbitrary or capricious charging decisions to result in unequal treatment.... The Legislature has thereby provided a *judicial counterweight to any perceived prosecutorial charging excess....*

*Id.* at 1209 (emphasis added). Relying principally on the Legislature's adoption in 1971 of section 939, we sustained the constitutionality of the Delaware legislative design as not being a denial of Marine's right to equal protection and due process. *Id.*

The State concedes, as it must, that 10 *Del.C.* § 939 may not be read as supporting its argument that a trial court is required to address the statutory factors found in subsections (2) and (3) of section 939(b) regardless of its findings in applying subsection (1). Once Superior Court found that the evidence before it, viewed in its totality, was insufficient to establish a *prima facie* showing against Marine of murder in the first degree, the reverse amenability proceeding, as established by the Legislature, was at an end. Superior Court was not required to give any further consideration to subsections (2) and (3) of section 939(b). The court was not required either to address the remaining subsections or weigh the several statutory factors of section 939(b). A "negative" finding by the court under subsection (1) of section 939(b) rendered moot any consideration by the court of subsections (2) and (3).

As we have stated above, and previously held in *Marine I,* a juvenile defendant charged with less than murder in the first degree is statutorily entitled to Family Court proceedings in his interest. *Id.* at 1212. Thus, when a juvenile, such as Marine, is charged with murder in the first degree and seeks a reverse amenability hearing, the court must first consider the threshold question of whether the State has established a *prima facie* case of first degree murder under the totality of the evidence. This requirement is explicitly dictated by the General Assembly's adoption of subsection (1) of 10 *Del.C.* § 939(b). Our earlier holding, that a juvenile cannot be sentenced to life imprisonment as an adult if the State does not have a fair likelihood of convicting him or her of first degree murder, is the law of the case and entirely consistent with that statutory requirement. *Marine I,* 607 A.2d at 1212; *see also supra* note 5.

Therefore, we hold that Superior Court's finding under section 939(b)(1) that there was not a fair likelihood of Marine being convicted of murder in the first degree dispensed with any need for the court to proceed further with the reverse amenability hearing.

### C.

■ We turn to the remaining issue B, whether the record supports the "fact finding of the Superior Court." [12] That issue subsumes the State's further contention that the court abused its discretion in taking into consideration testimony of psychological experts to negate the element of intent. As previously noted, Marine argues that Superior Court's ultimate finding, that the State did not have a "fair likelihood" of convicting Marine of the offense of murder in the first degree, is supported by substantial and legally sufficient evidence. The State responds by claiming error of law by Superior Court in "considering," *i.e.,* presumably relying upon, the psychological testimony of Marine's experts that was offered to "reduce the murder from first to second degree." The State argues that Marine's experts "showed nothing more than that he may have suffered from irresistible impulse [or] that he was guilty but mentally ill of first degree murder." [13] The State further con-

---

12. *See supra* section I.

13. More particularly, the State asserts:

In this case, there is no doubt that Marine was the actor. Marine's confession describing the strangulation of Amanda Hemphill establishes that fact. Although ultimately at trial, Marine denied being the killer, at least preliminarily, his confession showed a "fair likelihood" that he was the killer. Similarly, the nature of crime demonstrated a "fair likelihood" that Marine acted intentionally. The medical examiner demonstrated, contrary to Marine's claim in his confession, that Amanda's death was not accidental. Amanda had been slammed against a tree, struck by the back of the hand, and strangled to death.

tends that since an intent to kill does not require premeditation, deliberation or any showing of malice,[14] a showing of intent is established simply by the State's offer of evidence that it was defendant's "conscious object to engage in conduct of that nature or to cause that result." 11 *Del.C.* § 231(a)(1). The State argues that testimony from Marine's expert witness of the absence of premeditation was not only irrelevant but "impermissible," because offered as a form of diminished responsibility defense. *See Gray v. State*, Del.Supr., 441 A.2d 209, 224–25 (1982); *Bates v. State*, Del.Supr., 386 A.2d 1139, 1142–44 (1978). The State asserts that such evidence was irrelevant because Marine did not raise a defense of guilty but mentally ill of first degree murder.

The Superior Court's evidentiary hearing in 1988 spanned three days. Marine, in support of his motion for reverse amenability transfer, presented the testimony of four employees of Ferris School; namely his youth care worker, his youth care worker's supervisor, his psychiatric social worker and his case manager. Marine also presented the testimony of two psychologists, the two police officers who led the homicide investigation, and several character witnesses. The State presented only the testimony of the assistant medical examiner who performed the autopsy and testimony from two of Marine's former elementary school teachers.

We have previously ruled that Superior Court correctly framed the issue before it as turning upon "whether the evidence in its totality shows *prima facie* a conscious object or purpose to cause death as opposed to a reckless state of mind." *Marine Mem. Op.* at 13. Addressing this question, the court stated:

> In this case, the defense has shown that Marine had the social developmental age of a twelve-year-old and that there was no evidence of adult design or intention when he encountered Amanda. Marine became unexpectedly involved in a dispute and physical fight with her over

whether he could build a bridge over a creek. The injuries inflicted were also consistent with the testimony that this event was the result of spontaneous juvenile anger accompanied by reckless conduct which manifested a cruel, wicked, and depraved indifference to human life. Although Marine ultimately admitted to causing the death of Amanda, his ultimate confession to the police did not reveal any conscious object or purpose to cause Amanda's death. The arresting officers assessed Marine's credibility, and they charged him with Murder in the Second Degree. A person is guilty of Murder in the Second Degree when he recklessly causes the death of another person under circumstances which manifest a cruel, wicked, and depraved indifference to human life. 11 *Del.C.* § 635. Given the evidence presented at the reverse amenability hearing, and after weighing all the circumstances surrounding the acts charged, the Court concludes that a *prima facie* case on that charge has not been established because the State did not have a fair likelihood of convicting Marine of Murder in the First Degree.

*Marine Mem. Op.* at 14. On appeal, this Court will not overturn a trial judge's finding of fact unless there is an evident abuse of discretion, *see Flamer*, 585 A.2d at 754; and the State acknowledges that this Court's review of factual findings is limited either to error of law or abuse of discretion.

We find no error of law or abuse of discretion in the Superior Court's evidentiary rulings. We find that the record, consisting of the totality of the evidence offered at the reverse amenability hearing, fully supports the court's findings that the State did not have a fair likelihood of convicting Marine of murder in the first degree. Section 939(b) expressly confers on a trial court broad discretion in determining

---

Plainly, under settled Delaware law, a trier of fact may infer that a defendant intended the natural and probable consequences of his act. *Winborne v. State*, Del.Supr., 455 A.2d 357, 360 (1982). The State established a *prima*

*facie* case against Marine for first degree murder.

**14.** *See Delaware Criminal Code with Commentary* (1973) at p. 194 (1973).

what evidence is relevant to the objectives of a reverse amenability hearing. *See* 10 *Del.C.* § 939(b) (court "may consider evidence . . . deemed relevant"). Whether testimony is relevant is within the discretion of the trial judge and will not be reversed absent a plain abuse of that discretion. *Lampkins v. State*, Del.Supr., 465 A.2d 785, 790 (1983); *see also Robelen Piano Co. v. DiFonzo*, Del.Supr., 169 A.2d 240, 246 (1961) (admission of expert testimony within trial court's discretion).

We decline to find the trial court to have abused its broad discretion in admitting the testimony of the several expert witnesses called by Marine during the reverse amenability hearing. Indeed, one can only conclude from the Superior Court's above-quoted findings that the court not only viewed all the evidence *in its totality* but particularly relied on "the circumstances surrounding the acts charged" in reaching its ultimate finding. Again, that finding was that the State did not have a "fair likelihood of convicting Marine of murder in the first degree."

In sum, we are required to find that the totality of the evidence supports the Superior Court's holding that Marine should never have been indicted or tried for first degree murder. Its holding is consistent with the court's finding that Marine was originally properly charged by the arresting police officers with second degree murder. The holding is also consistent with the Superior Court jury's finding that Marine was guilty of murder in the second degree and not guilty of murder in the first degree.

\* \* \* \* \* \*

■ For the foregoing reasons, we affirm Superior Court's ruling that Marine's application in 1988 under 10 *Del.C.* § 939(b)

for transfer of the case to the Family Court should have been granted. Had Marine been proceeded against originally in Family Court on a charge of murder in the second degree, as the Superior Court has determined was required, he would, under any circumstances, have been released from detention almost two years ago, on his attaining the age of eighteen years. Because Marine is now an adult over the age of nineteen years and no longer subject to Family Court's jurisdiction, we have no choice under the Delaware legislative framework but to remand the case to Superior Court with the direction that the court vacate Marine's conviction and sentence and order the Department of Corrections to release Marine.

\* \* \* \* \* \*

The order below is AFFIRMED; and the case is REMANDED for execution of the foregoing directions.

### UPON RESTATED MOTION FOR REARGUMENT

#### [Filed May 14, 1993]

On April 29, 1993, the State filed a motion for reargument under Rule 18 of the Court *en banc*'s decision dated April 14, 1993. By Order dated April 30, 1993, the Court directed the State to clarify and amplify its motion in a restated motion.[15]

The State's restated motion raises two issues, both of which are related to the State's proposed retrial of Marine, now that he is an adult, for having caused the death on November 21, 1987, of victim, and for which Marine was originally arrested

---

15. By Order dated April 30, 1993, the Court directed the State to file an amended and restated motion with respect to *one* of the two questions raised by the State, "the availability of retrial" of defendant Marine. This Court's April 30th Order thereby granted the State's request to be heard on this Court's direction in *Marine v. State* (April 14, 1993) ("*Marine II*"), *supra*, at page 1181, that Marine be released from incarceration. The Court informed the State that:

it is unable to rule on the pending motion without the State first amplifying and clarifying its position concerning the following questions, among others: what specific charges or criminal offenses does the State propose; date

of alleged commission thereof; the specifics of any proposed indictment; the court or courts arguably having jurisdiction over the offense(s); and the applicability of any statute of limitations to an arrest, indictment and trial for any such offenses.

*Marine v. State*, Del.Supr., No. 180, 1989 (April 30, 1993) (Order), slip op. at 2. The State filed an "amended and restated" motion for reargument on May 4, 1993, to which Marine filed a response on May 7, 1993; and the matter is now under submission under Rule 18. In its restated motion, the State confines its reargument to the one question stated above.

the following day and charged with committing the crime of Murder in the Second Degree. First the State contends that because Marine is now an adult and not subject to the Family Court's jurisdiction, 10 *Del.C.* §§ 921 & 938, Marine can now again be charged with Murder in the First Degree and tried in Superior Court. Alternatively, the State contends that Marine can now be charged with Murder in the Second Degree and tried in the Superior Court. We find both of the State's contentions to be without merit.

■ The State's first contention is grounded in the premise that Marine may be retried for the death of victim because he has never been in jeopardy. Since we have voided Marine's conviction in Superior Court for that court's lack of jurisdiction to try Marine for the offense of Murder in the Second Degree, the State argues that the jury's verdict of guilt of Murder in the Second Degree is a nullity.

The United States Supreme Court has held that, in the criminal context, the Fifth Amendment guarantee against double jeopardy embodies the corollary doctrine of "collateral estoppel." *Ashe v. Swenson*, 397 U.S. 436, 444–45, 90 S.Ct. 1189, 1194–95, 25 L.Ed.2d 469 (1970). According to the United States Supreme Court, the doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future law suit." *Id.* at 443, 90 S.Ct. at 1194. Therefore, the doctrine of collateral estoppel may bar retrial in cases in which the Double Jeopardy Clause would not. *Id.* at 446, 90 S.Ct. at 1195. Delaware law generally coincides with federal law in the interpretation and application of principles of double jeopardy and collateral estoppel. *See Sudler v. State*, Del.Supr., 611 A.2d 945, 948 n. 6 (1992) (double jeopardy); *Columbia Casualty Co. v. Playtex FP, Inc.*, Del. Supr., 584 A.2d 1214, 1216 (1991) (collateral estoppel).

In Marine's case, the Superior Court's determination that the State did not have a substantial likelihood of convicting Marine of Murder in the First Degree has been affirmed by this Court and, therefore, becomes a valid and final judgment. Consequently, the issue of whether the facts presented in Marine's case properly warrant a charge of Murder in the First Degree cannot be litigated again between the State and Marine in any future law suit. Any future prosecution of Marine for Murder in the First Degree is therefore barred by the United States Supreme Court's construction of the doctrine of collateral estoppel in the criminal context. *See Ashe*, 397 U.S. at 446, 90 S.Ct. at 1195.

■ We turn to the State's alternate contention that Marine can now be prosecuted in the Superior Court for Murder in the Second Degree for causing the death of victim. As recently as a year ago, the State argued that the age of a defendant on the date of arrest (charge) is determinative of the question of whether the Superior Court or the Family Court has jurisdiction over the offense. *See Howard v. State*, Del.Supr., No. 385, 1991, Walsh, J., [612 A.2d 158 (Table)] (July 2, 1992) (Order). In *Howard*, this Court, relying upon *State v. Connors*, Del.Super., 505 A.2d 1301 (1986), held that the defendant's age at the time of his arrest for a given offense is determinative of the question of jurisdiction. Thus, in *Howard* we held that the defendant, who was eighteen years old at the time of his arrest, was subject to trial in Superior Court notwithstanding the fact that he was seventeen years old at the time of the commission of the alleged crime. *See Howard*, slip op. at 3. Having prevailed on the jurisdictional question raised in *Howard*, the State's argument to the contrary in *Marine* is not only inconsistent, but disingenuous *and* erroneous as a matter of law.

Marine was fourteen years old at the time of his arrest. Thus, under *Howard*, if he had been originally indicted for Murder in the Second Degree, under the Delaware statutory framework Family Court would have had exclusive original jurisdiction of Marine for trial of the offense of Murder in the Second Degree. Marine was fourteen years old at the time of his arrest and the

time of the offense. The Delaware statutory scheme makes the date of arrest and the crime charged determinative of whether Family Court or Superior Court has jurisdiction. *See* 10 *Del.C.* §§ 921, 931 & 938; *see also Connors*, 505 A.2d at 1302. Since Marine is now more than eighteen years of age, he cannot be tried in the Family Court for Murder in the Second Degree.

Under the law of the case of *Marine II*, Superior Court is also without jurisdiction to try Marine for Murder in the Second Degree. Therefore, Marine must be released from custody.

The State characterizes this Court's construction of the Delaware statutory framework as producing an "absurd result," stating "that [Marine] gets away with murder." The State makes this *ad hominem* argument in lieu of complying with this Court's directive that it address "all pertinent authorities and Delaware decisional law" on the question of Marine's availability for retrial.

It is well-established Delaware law that the prosecuting attorney represents all the people, including the defendant. *Bennett v. State*, Del.Supr., 164 A.2d 442, 446 (1960). The prosecutor has a duty to see that the State's case is presented with earnestness and vigor, but it is equally his duty to see that justice be done to the defendant. *Id.* Although the prosecutor operates within an adversary system, his duty is to seek justice, not merely convictions. *Sexton v. State*, Del.Supr., 397 A.2d 540, 544 (1979).

> The office of prosecutor is an agency of the executive branch of government which is charged with the duty to see that the laws are faithfully executed and enforced in order to maintain the rule of law.

*Id.* at 544 n. 1 (quoting ABA STANDARDS, THE PROSECUTION AND DEFENSE FUNCTIONS (Approved Draft, 1971)).

The rule of law defines the boundaries which preserve the freedom of all citizens in a civilized and democratic society. In accordance with the rule of law, the Delaware General Assembly has defined the jurisdictional boundaries of the Superior Court and the Family Court, based upon the nature of the crime and the date of the defendant's arrest. Those boundaries prohibit the State from retrying Marine, who is more than eighteen years of age, in the Superior Court for Murder in the Second Degree.

\*　　\*　　\*　　\*　　\*　　\*

This 14th day of May, 1993, the State's Motion for Reargument is DENIED, and the mandate shall issue forthwith.