**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE )
)
v. ) Crim. ID No. 2010012297
)
IMANI OAKLEY, )
)
Defendant. )

## <u>MEMORANDUM OPINION</u>

Submitted: April 13, 2022
Decided: May 11, 2022

*Upon Consideration of State's Motion to Restore Competency,*
**GRANTED.**

William L. Raisis, Esquire, and William Leonard, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware. *Attorneys for State*.

F. Phillip Renzulli, Esquire, Assistant Public Defender, Office of Defense Services, Wilmington, Delaware. *Attorney for Defendant*.

**MEDINILLA, J.**

## I.     INTRODUCTION

At 18,[1] Defendant Imani Oakley ("Defendant") stands accused as an adult for charges related to a robbery and shooting in October of 2020.[2]  After he was indicted in this Court, he filed a Motion to Transfer his charges back to Family Court.  Before the Court could consider that motion, it ordered a competency evaluation at Defense Counsel's request that yields an unchallenged opinion that Defendant is not competent to stand trial.  On March 9, 2022, the State filed a Motion to Restore Competency.  At Defense Counsel's request, this Court conducted a hearing on April 13 to determine if the State has made out a *prima facie* case against Defendant under 11 *Del. C.* § 404(a).  For the reasons that follow, the State's Motion is **GRANTED**.

## II.     FACTUAL AND PROCEDURAL HISTORY[3]

On October 9, 2020, officers from the New Castle County Police Department responded to a 9-1-1 call regarding a shooting at 201 River Road in Wilmington, at the then-closed River Road Swim Club.  Officers found a male victim in critical condition suffering from a gunshot wound.  Upon investigation, various pieces of information led law enforcement to Defendant, primarily evidence from his cell phone.

---

[1] Defendant's date of birth is August 26, 2003.
[2] Indictment, True Bill No. 44, D.I. 2 (Defendant is charged with two counts of Robbery First Degree, four counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), Conspiracy Second Degree, Assault First Degree, Reckless Endangering First Degree, and Possession of a Firearm by a Person Prohibited – Juvenile ("PFBPP")).
[3] This recitation is based upon oral argument and evidence presented at the hearing on April 13, 2022.

First, the brother of the victim ("Brother") told officers he had communicated with an individual via text message regarding a drug exchange involving marijuana expected to take place at the River Road Swim Club. Brother provided officers with a local Delaware "302" number. A cellphone extraction report of Brother's phone showed communications with the 302 number on the day of the shooting, including a time and location of the drug transaction.

Brother told investigating officers that when he and his brother arrived at the predetermined location, a text from the same 302 number directed them to pull farther down the street. Two males then emerged from a wooded area and approached the passenger side of the car. One of the individuals then brandished a firearm, demanded the marijuana, fired the weapon and shot the victim. The subjects then ran into a wooded area adjacent to Edgemoor Gardens.

A tactical inquiry for the 302 number tied the cell phone to Defendant, registered to his mother who confirmed the 302 number belonged to her son and permitted police to interview him. During the interview, Defendant admitted to knowing about—and having used previously—the dirt path in the wooded area that leads to Edgemoor Gardens and admitted he was in Edgemoor Gardens on the day of the shooting.

The extraction report from Defendant's phone mirrors the same text messages from Brother's phone regarding the drug sale. Defendant admits the cell phone number was his but told police he had lost his phone on the evening of the shooting. This statement is uncorroborated and conflicts with evidence of a "selfie" picture wherein he is depicted holding a loaded weapon during the time when he claims he lost his phone. The cell phone

also contained various photographs of Defendant possessing firearms and shows that multiple internet searches were conducted with that phone of the area where the shooting occurred.

Both suspects were described as wearing dark clothing and black surgical masks. Neither the victim nor Brother identified Defendant as the shooter nor could either provide further descriptions, except to say that one suspect wore dread-style hair similar to Defendant's coif. Finally, a communication from Defendant's phone to an unknown number immediately before the shooting stated "I m bout to hit a lick rq." The State's witness testified that a "lick" is a common slang term for robbery, and that "rq" could mean "real quick."

### III.    STANDARD OF REVIEW

The State concedes Defendant is not competent. Accordingly, "the court may order the accused person to be confined and treated in the Delaware Psychiatric Center until the accused person is capable of standing trial."[4] Upon motion by the defendant, "the court may conduct a hearing to determine whether the State can make out a *prima facie* case against the defendant."[5]

In determining whether the State can make out a *prima facie* case under 11 *Del. C.* § 404(a), the court conducts an analysis analogous to the fair likelihood of conviction determination performed in a reverse amenability hearing.[6] It considers "whether there is

---

[4] 11 *Del. C.* § 404(a).
[5] *Id.*
[6] *State v. Tankard*, 2014 WL 10187038, at *1 (Del. C.P. Nov. 10, 2014).

4

a fair likelihood that [the defendant] will be convicted of the crimes charged,"[7] if we assume that "the evidence [here]…stands unrebutted by the defendant at trial."[8]

At this juncture, the State has established its *prima facia* case against Defendant. Though no identification was made, sufficient evidence exists that Defendant orchestrated the robbery which led to the shooting. The cell phone evidence establishes an intent to meet Brother, presumably for a drug exchange and that he was "bout to hit a lick rq" (commit a robbery). Further, the phone is replete with evidence of Defendant holding various handguns to support the PFBPP. He knew of the same wooded path used by the fleeing suspects and admitted to being in Edgemoor Gardens at the time of the shooting. Defendant's uncorroborated statement that he lost his phone does little to unhinge the State's *prima facie* case. Thus, the State's Motion to Restore Competency is **GRANTED**.

Under 11 *Del. C.* § 404(a), Defendant shall be confined to the Delaware Psychiatric Center until he is deemed capable of standing trial.

**IT IS SO ORDERED.**

/s/ Vivian L. Medinilla
Vivian L. Medinilla
Judge

oc: Prothonotary
cc: William L. Raisis, Esquire
William Leonard, Esquire
F. Phillip Renzulli, Esquire

---

[7] *State v. Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[8] *Id.*