# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. No. 2301014859 |
| | ) | |
| MEHKI WILSON, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: August 16, 2023
Decided: August 21, 2023

*Upon Defendant Mehki Wilson's Motion Pursuant to 10 Del. C. § 1011 to Transfer Charges to the Family Court*

**DENIED.**

## ORDER

Daniel McBride, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, DE 19801, Attorney for the State of Delaware.

Sager Shah, Esquire, 704 N. King Street, Suite 205, Wilmington, DE 19801, Attorney for Defendant Mehki Wilson.

**WHARTON, J.**

This 21st day of August 2023, upon consideration of Defendant Mehki Wilson's Motion Pursuant to 10 *Del. C.* § 1011 to Transfer Charges to the Family Court, it appears to the Court that:

1.      Defendant Mehki Wilson ("Wilson") has been charged by indictment with Robbery First Degree (two counts), Conspiracy Second Degree, Assault Second Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF") (two counts, one related to the robbery charge and one to the assault charge), and misdemeanor Theft.[1]  It appears that the robbery charges advance different theories of liability for the same robbery and not distinct robberies.  He seeks to transfer these charges to Family Court under 10 *Del. C.* §1011.  A reverse amenability hearing was held on August 16, 2023.  Testifying at the hearing for the State were Det. Adam Holubinka ("Det. Holubinka") of the New Castle County Police Department ("NCCPD") and Investigator Daniel Masi ("Inv. Masi"), a criminal intelligence investigator with the Delaware Department of Justice.  Testifying for Wilson were Master Family Service Specialist Genevieve Franklin ("Ms. Franklin") of the Department of Services for Children, Youth, & Their Families ("DSCYF"), Division of Youth Rehabilitative Services ("DYRS"), Community Services and Jared B. Moore, Psy. D ("Dr. Moore").  The Court received reports authored by Ms. Franklin

---

[1] Indictment.

2

and Dr. Moore as well as Dr. Moore's *curriculum vitae* into evidence. The Court also received into evidence nine photographs through the testimony of Inv. Masi.

2. Det. Holubinka provided the State's version of the facts supporting the charges based on his interview of the complaining witness, CB, information provided to him by other NCCPD officers, and his own investigation. The charges against Wilson are the result of a meeting Wilson arranged with CB. On January 26, 2023, Wilson invited CB to play video games and "smoke"[2] at Wilson's grandmother's house. The invitation was extended via Instagram. CB drove to Oakmont Park where he was supposed to meet Wilson. Wilson arrived in a tan Chevy Malibu just before 4:00 p.m., got out of the passenger seat and got in CB's car in the front passenger seat. The two exchanged pleasantries for a time until an unknown male entered the rear of CB's vehicle and pointed a gun at CB. The unknown man told Wilson the "run [CB's] pockets" while threatening to shoot CB. Wilson took two cell phones that were in a cup holder and CB's wallet form his jacket. The unknown male hit CB with the gun causing significant swelling. Wilson and the unknown male returned to the tan Malibu which was driven by a third individual and fled. CB described the unknown man as black, older and heavier than Wilson with some facial hair, and wearing a black hoody and sweat pants. He described the gun as a tan Glock with a flashlight and an extended magazine.

---

[2] Slang for smoke marijuana.

3.      Pole cameras showed the tan Malibu entering Oakmont at 3:47 p.m. and leaving at 3:53. The license plate was captured by license plate readers. The license plate showed that the Malibu was registered to co-defendant Marcus Waller's ("Waller") mother. NCCPD put out a BOLO[3] for the vehicle, resulting in it being stopped on January 29th. The vehicle was occupied by Waller who fled and attempted to discard a gun. Waller was captured and the gun recovered. The gun was a tan Glock with an extended magazine and a flashlight/laser attachment. CB's driver's license was found in a search of the vehicle. CB identified a photograph of Wilson who was arrested on January 31st.

4.      While juvenile crimes usually are handled in Family Court,[4] this Court maintains original jurisdiction over juveniles, aged 16 and older, who commit certain enumerated crimes.[5] These crimes include, as charged here, Robbery in the First Degree.[6] Despite having jurisdiction, this Court has the discretion to transfer these charges to Family Court if it finds such a transfer to be in the interest of justice.[7]

5.      Upon petition from the juvenile, this Court must hold a reverse amenability hearing and weigh the factors set forth in 10 *Del. C.* §1011(b) before making a decision where a juvenile's charges should be tried. The purpose of this

---

[3] Be On Look Out.
[4] *State v. Anderson*, 385 A.2d 738, 739 (Del. Super. Ct. 1978).
[5] *Id.* at 739–40 (citing 10 *Del. C.* §938, redesignated as 10 *Del. C.* §1010 and amended by 69 Laws 1993, ch. 335, §1, eff. July 8, 1994). *See also* 10 *Del. C.* §921.
[6] 10 *Del. C.* §1010(a)(1).
[7] 10 *Del. C.* §1011(b).

hearing is to place a judicial check on the prosecutorial charging of juveniles.[8] "Since a juvenile charged with a designated felony in the Superior Court has lost the benefit of Family Court adjudication by statutory pronouncement, there is [a] presumption that a need exists for adult discipline and legal restraint. Hence, the burden is upon the juvenile to demonstrate the contrary."[9]

6.      Prior to addressing § 1011(b)'s factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile[.]"[10] The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[11] Furthermore, "[a] real probability must exist that a reasonable jury could convict the juvenile based on the totality of the evidence, assuming that the evidence introduced at the [reverse amenability] hearing is unrebutted by the juvenile at trial."[12]

7.      Based on the testimony of Det. Holubinka, the Court finds that there is a fair likelihood of conviction, in other words there is real probability that a reasonable jury could find Wilson guilty of all charges. In fact, Wilson conceded as much at the hearing. Identity is not an issue as CB and Wilson know each other. Further, CB's description of events is supported by his injuries, the surveillance

---

[8] *See State v. Anderson*, 697 A.2d 379, 383 (Del. 1997) (citations omitted).
[9] *Anderson*, 385 A.2d at 740 (citation omitted).
[10] *State v. Harper*, 2014 WL 1303012, at *5 (Del. Super. Ct. March 31, 2014) (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[11] *Id.*
[12] *Id.* (citation omitted).

videos of the defendants' vehicle, the recovery of the handgun discarded by Waller matchings the description provided by CB, and the recovery of CB driver's license in Waller's vehicle.

8.  Returning to the § 1011(b) factors, the first is the nature of the present offense and the extent and nature of the defendant's prior record. This factor is two-pronged.[13] Here, the charges are premeditated, violent and serious, including three Class B felonies, but Wilson's prior record is minimal with only a probation before adjudication disposition for a possession of drug paraphernalia charge. Several other charges, some of which were serious, were *nolle prossed*. This first factor favors neither Wilson, nor the State.

9.  The second factor under § 1011(b) is the nature of past treatment and the defendant's response. Due to his minimal record, Wilson has had little opportunity to be exposed to treatment, but has done well while detained, achieving "Gold" status and successfully participating in the educational program at the New Castle County Detention Center. This factor favors Wilson.

10.  The third factor under § 1011(b) is whether the interests of society and Wilson would be better served by a trial in the Family Court or in the Superior Court. Both Ms. Franklin, on behalf of DYRS, and Dr. Moore recommend resolution of the charges in Family Court.

---

[13] *See* 10 *Del. C.* §1011(b)(1).

11.     Ms. Franklin notes that, while Wilson has been monitored by DRYS community supervision for the past year and five months, "he has not had the benefit of residential placement or community-based services and has been detained since 1/31/2023."[14]  She recommends Family Court disposition so that Wilson may have the opportunity to benefit from those services.

13.     Dr. Moore conducted a forensic psychological evaluation of Wilson and his report was introduced into evidence at the hearing.[15]  The report identified the relevant documents Dr. Moore reviewed, cited Wilson's prior legal information, and discussed his personal and family history, and his psychiatric, medical, and substance abuse histories.[16]  The report also included sections entitled "Clinical Presentation and Mental Status Exam," "DSM-V-TR Psychiatric Diagnosis," and "Amenability to Juvenile Justice Rehabilitation."[17]

14.     Dr. Moore conducted the Structured Assessment of Violence Risk in Youth ("SAVRY").[18]  The SAVRY allows the clinician the ability to assess risk in a manner unique to each case.[19]  It identifies unchanging historical risk factors, dynamic social/contextual and individual/clinical risk factors, and protective factors which mitigate the risk for future violence.[20]  SAVRY results showed Wilson to have

---

[14] Def.'s Ex. 1, Reverse Amenability Report, Aug. 3, 2023, at 6.
[15] Def.'s Ex. 3, Forensic Psychological Evaluation, July 12, 2023.
[16] *Id.* at 1-5.
[17] *Id.* at 5-14.
[18] *Id.* at 6.
[19] *Id.*
[20] *Id.*

an overall low risk score in the historical risk category.[21] His overall score in the social/contextual risk category was moderate.[22] His overall rating in the individual/clinical risk factors was low.[23] In his testimony and in his report, Dr. Moore also emphasized studies that show that adolescents and young adults have not fully developed emotionally and socially. He recommended that Wilson be provided with programming at the Family Court level and not at the adult level, where he thought programming was nearly non-existent for someone like Wilson.

15. Of significance to the Court in assessing in what court the needs of society, and to some lesser degree Wilson, would be better met is the testimony of Inv. Masi. Inv. Masi can fairly be described, based on his training and experience, as a criminal street gang expert. Through him the State introduced a series of Instagram photographs from Wilson's Instagram account depicting Wilson and others displaying hand gestures, clothing, and terminology used by the Neighborhood Rollin' 60's Crips. The Neighborhood Rollin' 60's Crips is a violent national gang with its origins in west Los Angeles. Membership is usually gained by "putting in work," meaning committing acts of violence. As national gang, it is more intimidating than what Inv. Masi described as hybrid local gangs such as NorthPak.[24] Leaving a national gang is very hard and requires a level of approval

---

[21] *Id.*

[22] *Id.* at 7.

[23] *Id.* at 8.

[24] The Court is familiar with NorthPak and its record of homicidal violence.

not available locally. Inv. Masi identified Wilson as a member of the Neighborhood Rollin' 60's Crips.

16. Neither Ms. Franklin, nor Dr. Moore were aware of Wilson's gang membership, although Dr. Moore allowed that gang participation has the potential to increase risk.[25] Because they were unaware of Wilson's gang affiliation, Ms. Franklin and Dr. Moore did not have an accurate understanding of the societal risk he presents. This knowledge deficiency seriously undermines their recommendation that Wilson's charges be sent to Family Court. Wilson turns 18 on January 3, 2024. Even if his charges were to be resolved promptly in Family Court, it is unlikely that programming for him could begin until nearly the end of this year. Potentially, he could be sentenced to six months at Level V at Ferris School followed by 90 days at a Level IV cottage, followed by community supervision until he is 19. When he is placed on community supervision, the Court assumes, because it has not been told otherwise, that Wilson will be returned to the same place where he became affiliated with the Neighborhood Rollin' 60's Crips. Under these circumstances, it is inconceivable to the Court that the juvenile system could provide programming sufficient to immunize Wilson from the desire (or necessity) to return to the gang, particularly given the difficulty he would encounter in attempting to leave it.

---

[25] The Court is unaware of Dr. Moore's familiarity with criminal street gangs, but it is almost certainly lees that Inv. Masi's.

9

17.     The benefit to society of not having a gang member amongst it is obvious.  While the current charges would be Wilson's first violent felony convictions should he be convicted, membership in a violent national street gang such as the Neighborhood Rollin' 60's Crips creates a significant risk that it would not be his last.[26]  This factors weighs significantly  against transfer to Family Court.

18.     The Court, having weighed the factors under § 1011(b), finds that Wilson has not met his burden of demonstrating that his charges should be resolved in Family Court.  His motion to transfer is **DENIED.**

19.     Wilson also is charged with two counts of PFDCF.  The provisions of 11 *Del. C.* § 1447A(f) mandate that "[e]very person charged under this section over 16 years, who, following an evidentiary hearing where the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a Title 11 or Title 13 violent felony…shall be tried as an adult, notwithstanding any contrary provisions or statutes governing the Family Court or any other state law."  At the time of the alleged offenses on January 26, 2023, Wilson, whose date of birth is January 3, 2006, was 17 years old.

20.     Both Assault Second Degree and Robbery First Degree are violent felonies.[27]  Therefore, the PFDCF charge must be tried in Superior Court if the Court

---

[26] It is the common fate of young gang members that either they become homicide victims or are sentenced to decades of incarceration.  Perhaps, if he is convicted and sentenced in the Superior Court on these charges, Wilson can avoid either of those outcomes.

[27] 11 *Del. C.* § 4201(c) and (d).

10

finds "proof positive or presumption great" that Wilson used, displayed, or discharged a firearm while committing Assault in the Second Degree or Robbery in the First Degree. But, here, the State's theory of liability for Wilson is that he was an accomplice to his codefendant Waller who had actual possession of the firearm.

21. Thus, the issue is whether there is "proof positive and presumption great that Wilson used, displayed, or discharged a firearm during the commission of the violent felonies of Robbery First Degree and Assault Second Degree, mandating Superior Court jurisdiction for the PDWDCF charges. The resolution of that issue turns on whether the meaning of the language of § 1447A(f) that "the accused used, displayed, or discharged a firearm during the commission of a Title 11 or Title 13 violent felony" encompasses accomplice liability or is limited to the actual defendant before the Court.

22. Citing no case law to support its position,[28] but relying on 11 *Del. C.* § 271, the State argues that Waller's use and display of the firearm is sufficient to mandate jurisdiction in this Court over Wilson. That section provides that "A person is guilty of an offense committed by another when…intending to promote or facilitate the commission of the offense, the person…aids, counsels, or agrees, or attempts to aid the other person in planning or committing it."[29]

---

[28] To its credit, the State did provide the Court with case law contrary to its position.

[29] 11 *Del. C.* § 271(2)b.

23.     Wilson argues that § 271, dealing with guilt determination, has no applicability here to what is solely a jurisdictional question.  He is supported in that argument by at least two decisions of this Court – *State v. Vasquez*[30] and *State v. Dunn.*[31] The discussion of the issue in the latter is more expansive than in the former.

24.     It is an interesting question, and one perhaps deserving some clarification from the General Assembly.  But, given the Court's determination to deny transfer under § 1011(b), it is not one the Court need address here.

**THEREFORE,** Defendant Mehki Wilson's Motion Pursuant to 10 *Del. C.* § 1011(b) to Transfer Charges to Family Court is  **DENIED**.

**IT IS SO  ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[30] 2021 WL 4077812, at *3 (Del. Super. Ct. Sep. 1, 2021.)
[31] Memorandum Opinion, I.D. No. 2008008210, at 10-15 (Del. Super. Ct. Apr. 15, 2021).