# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
         )
         )  ID No. 2510005962
v.          )
         )
KAYVON ASHTON-MORGAN,      )
         )
Defendant.          )

Submitted: April 23, 2026
Decided: April 28, 2026

*Upon Defendant Kayvon Ashton-Morgan's Motion for Reverse Amenability Hearing*

**DENIED.**

## **ORDER**

Erika Flaschner, Esquire, William H. Leonard, Jr., Esquire, Deputy Attorneys General DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, DE 19801, Attorneys for the State of Delaware.

Peter W. Veith, Esquire, 1523 Delaware Avenue, First Floor, Wilmington, DE 19806, Attorney for Defendant Kayvon Ashton-Morgan.

**WHARTON, J.**

This 28th day of April 2026, upon consideration of Defendant Kayvon Ashton-Morgan's Motion for Reverse Amenability Hearing, it appears to the Court that:

1.    Defendant Kayvon Ashton-Morgan ("Ashton-Morgan") has been charged by indictment with two counts of Murder First Degree, two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), two counts of Wearing a Disguise During the Commission of a Felony, and one count of Possession of a Firearm by a Person Prohibited ("PFBPP").[1]  He seeks to transfer these charges to Family Court under 10 *Del. C.* §1011.  A reverse amenability hearing was held on April 23, 2026.  Testifying at the hearing for the State were Det. Justin Wilkers ("Det. Wilkers") of the Wilmington Police Department and Juvenile Probation and Aftercare Specialist III at the New Castle County Detention Center Jennifer Wilson. ("Spc. Wilson") of the Department of Services for Children, Youth, & Their Families ("DSCYF"), Division of Youth Rehabilitative Services ("DYRS").  Ashton-Morgan presented the testimony of Robin Belcher-Timme, Psy.D., ABPP ("Dr. Timme").  The Court received reports authored by Spc. Wilson and Dr. Timme into evidence.  Also received into evidence were a compilation video of surveillance camera footage from before, during and after the homicides, and various photographs.

---

[1] Indictment, D.I. 3.

2.     The homicide victims, Nathan Lopez and Kaleb Blumberg, both 17, were killed as they sat in a car stopped at the intersection of 6th and Pine Streets in Wilmington on October 8, 2025.  Both victims died of gunshot wounds to the head. The events giving rise to the charges against Ashton-Morgan were captured on a number of surveillance cameras in the area of the incident and presented as a time-sequenced video compilation encompassing a period several minutes before the murders and ending shortly after them.  The murders occurred in broad daylight. The compilation video depicts four individuals, including Ashton-Morgan walking in the area prior to the victims stopping at the intersection.  Three of the four appear to engage the victims in conversation while Ashton-Morgan separates from the three and goes around the block.  During that time several of the remaining three disengage and re-engage with the victims.   Finally, Ashton-Morgan comes back and approaches the passenger side of the vehicle.  He appears to shoot into the vehicle which then lurches forward, strikes something and reverses.   All of the four individuals originally seen walking in the area flee.

3.     The next day, Ashton-Morgan's mother brought him to the House Sergeant's Office at the Wilmington Police station at attempted to surrender him the incident that happened the previous day.  However, the House Sergeant's unfamiliarity with the incident thwarted that effort.  After Ashton-Morgan was identified from still shots from the compilation video by a school resource officer, he was arrested.  He was not interviewed by the police, but after his video

3

presentment before a magistrate, he asked Det. Wilkers if he "was out there that day" and said, "I'm sorry you had to see what I did."

4. While juvenile crimes are usually handled in Family Court,[2] this Court maintains original jurisdiction over juveniles, aged 16 and older, who commit certain enumerated crimes.[3] These crimes include, as here, Murder in the First Degree.[4] Despite having jurisdiction, this Court has the discretion to transfer these charges to Family Court if it finds such a transfer to be in the interest of justice.[5]

5. Ashton-Morgan also is charged with PFDCF. Therefore the provisions of 11 *Del. C.* § 1447A(f) apply. That section mandates that every person over 16 years of age charged with PFDCF be tried as an adult, "notwithstanding any contrary provisions or statutes governing the Family Court or any other state law" where the Superior Court finds after an evidentiary hearing "proof positive or presumption great that the accused used, displayed or discharged a firearm" during the commission of a violent felony.[6] At the time of the alleged offenses on October 8, 2025 Ashton-Morgan, whose date of birth is September 5, 2009, was 16 years one month, and three days old. Obviously, both murder charges are violent felonies.[7] Therefore, the PFDCF charge must be tried in Superior Court if the Court finds

---

[2] *State v. Anderson*, 385 A.2d 738, 739 (Del. Super. Ct. 1978).
[3] *Id.* at 739–40 (citing 10 *Del. C.* §938, redesignated as 10 *Del. C.* §1010 and amended by 69 Laws 1993, ch. 335, §1, eff. July 8, 1994). *See also* 10 *Del. C.* §921.
[4] 10 *Del. C.* §1010(a)(1).
[5] 10 *Del. C.* §1011(b).
[6] 11 *Del. C.* § 1447A(f).
[7] 11 Del. C. § 4201(c) and (d).

"proof positive or presumption great" that Ashton-Morgan used, displayed, or discharged a firearm while committing Murder in the First Degree.

6. Before making a decision where a juvenile's charges should be tried, and upon petition from the juvenile, this Court must hold a reverse amenability hearing and weigh the factors set forth in 10 *Del. C.* §1011(b). The purpose of this hearing is to place a judicial check on the prosecutorial charging of juveniles.[8] "Since a juvenile charged with a designated felony in the Superior Court has lost the benefit of Family Court adjudication by statutory pronouncement, there is [a] presumption that a need exists for adult discipline and legal restraint. Hence, the burden is upon the juvenile to demonstrate the contrary."[9]

7. Before addressing § 1011(b)'s factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile[.]"[10] The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[11] Furthermore, "[a] real probability must exist that a reasonable jury could convict the juvenile based on the totality of the evidence, assuming that the evidence introduced at the [reverse amenability] hearing is unrebutted by the juvenile at trial."[12]

---

[8] *See State v. Anderson*, 697 A.2d 379, 383 (Del. 1997) (citations omitted).
[9] *Anderson*, 385 A.2d at 740 (citation omitted).
[10] *State v. Harper*, 2014 WL 1303012, at *5 (Del. Super. Ct. March 31, 2014) (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[11] *Id.*
[12] *Id.* (citation omitted).

8.      Based on the evidence presented at the reverse amenability hearing, the Court finds that there is a real probability that a reasonable jury could find Ashton-Morgan guilty of all charges.  Ashton-Morgan conceded this point at the reverse amenability hearing.  Not only does the video compilation show him committing the murders, but Det. Wilkers testified that Ashton-Morgan admitted that he committed them immediately after his presentment.  Thus, the Court finds "proof positive and presumption great that Ashton-Morgan used, displayed, or discharged a firearm during the commission of the violent felony of Murder First Degree.

9.      The first factor under § 1011(b) is the nature of the present offense and the extent and nature of the defendant's prior record.  This factor is two-pronged.[13] Here, the charges are violent, serious, and demonstrate concerning antisocial behavior.  These murders were committed in broad daylight upon two unsuspecting victims who were merely sitting in a car engaged in conversation with Ashton-Morgan's associates.  No motive has been established.  Very few offenses approach these in seriousness.  On the other hand, Ashton-Morgan has no prior record.  Very few defendants coming before the Court seeking to have their cases heard in Family Court have unblemished prior records.  On balance, because of the extreme seriousness of the charges, this first factor weighs substantially against transfer.

---

[13] *See* 10 *Del. C.* §1011(b)(1).

10. The second factor under § 1011(b) is the nature of past treatment and the defendant's response. Again, due to the absence of a prior delinquency record, there is no real record of Ashton-Morgan's response to treatment. However, he appears to have adjusted well during his pre-trial detention and Dr. Timme opines that he would respond favorably to treatment. Dr Timme reports:

> He has no history of major mental illness, substance abuse disorder, personality disorder, or conduct disorder. He has no prior delinquency record and is not gang affiliated. Academically, Kayvon is a strong student and an outstanding basketball player with clear, realistic future academic and vocational goals.

This factor weighs in favor of transfer, although with the caveat that no explanation has been provided the Court to explain how someone with the positive qualities described by Dr. Timme could have come to murder two people.

11. The third factor under § 1011(b) is whether the interests of society and Ashton-Morgan would be better served by a trial in the Family Court or in the Superior Court. This factor strongly supports the Superior Court retaining jurisdiction. In weighing this factor, the Court has taken a number of considerations it considers relevant into account. Ashton-Martin will be 17 when his scheduled trial in Superior Court occurs.[14] Presumably, he would be about that age should he be tried in Family Court. Since DYRS can only provide services to him until age 19, it will be able to provide services to him for less than two years. Even that

---

[14] Trial currently is scheduled for October 5, 2026.

estimate may be overly generous considering that the pending adult charge of PFDCF will remain in Superior Court and make efforts to provide services through DYRS challenging.[15]

12.    Ashton-Morgan might benefit marginally by some of the charges remaining in Family Court to the extent that court is able to initiate rehabilitative efforts before he is transferred to adult supervision.  However, the Court finds that benefit to be modest when compared to the societal benefit of such grave charges remaining in Superior Court.

13.    Accordingly, the Court finds that Ashton-Morgan has failed to meet his burden of demonstrating that his charges should be resolved in Family Court.

**THEREFORE,** Defendant Kayvon Ashton-Morgan's Motion for Reverse Amenability is **DENIED**.


                                    **IT IS SO ORDERED.**


                                    /s/ Ferris W. Wharton
                                    Ferris W. Wharton, J.

---

[15] DYRS could retain supervision over him in a non-custodial setting until he is 21.