**SUPERIOR COURT**
OF THE

VIVIAN L. MEDINILLA
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
TELEPHONE (302) 255-0626

October 18, 2017

Eugene J. Maurer, Jr., Esq.
Eugene J. Maurer, Jr., P.A.
1201-A King Street
Wilmington, DE 19801

Phillip M. Casale, Esq.
Department of Justice
Carvel State Building
820 North French Street
Wilmington, DE 19801

Re: *State of Delaware v. Isaiah Lecompte*
    **Case ID No.: 1701012883**

Dear Counsel:

This is the Court's decision on Isaiah Lecompte ("Defendant")'s Motion to Transfer the Case to Family Court ("Motion"), filed on May 24, 2017.[1]  For the reasons stated below, Defendant's Motion is **GRANTED**.

On January 21, 2017, Defendant was fifteen years and two months old[2] when he allegedly committed the crimes of Robbery First Degree and Conspiracy Second Degree for which he is charged in this Court.[3]  Neither charge falls within this

---

[1] *State v. Lecompte*, Crim. I.D. No. 1701012883, D.I. #5 (Del. Super. May 24, 2017) [hereinafter Motion].

[2] Defendant's date of birth is November 29, 2001.  Motion at ¶ 3.

[3] Former charges of Possession of a Firearm During the Commission of a Felony ("PFDCF"), Possession, Purchase, Ownership, or Control of a Firearm by a Prohibited Juvenile, Possession, Purchase, Ownership, or Control of Ammunition by a Person Prohibited, and Carrying a Concealed Deadly Weapon were *nolle prossed* after the Delaware State Police analyzed the weapon and determined that it did not fit the definition of a firearm under 11 *Del. C.* § 222(12). Motion at ¶ n.1.

Court's exclusive jurisdiction and both can be considered for transfer to Family Court under 10 *Del. C.* § 1011. Defendant has been detained since his arrest on January 21, 2017 at the New Castle County Detention Center with the Division of Youth Rehabilitative Services ("YRS") for the Department of Services for Children, Youth and their Families ("DSCYF").

### *Factual and Procedural Background*

At the reverse amenability hearing on October 9, 2017, the Court considered the following evidence: a jointly submitted Stipulation regarding Defendant's alleged conduct that gave rise to the charges, and the report and testimony of the only witness, Jennifer Skinner, Master Family Service Specialist on behalf of YRS. The State called no witnesses.

### *Standard of Review*

The reverse amenability process is meant to identify those juveniles charged as adults who are amenable to the rehabilitative processes of the Family Court.[4] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[5]

Under § 1011(b), the Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;" (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;" (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court;" and (4) any "other factors which, in the judgment of the Court are deemed relevant."[6]

The Court need not make a preliminary determination of whether the State has made out a *prima facie* case against the Defendant because the defense conceded, for these purposes, that there is a fair likelihood of Defendant's conviction if he proceeded to trial. The Court turns to an analysis of the four statutory factors

---

[4] *See generally* 10 *Del. C.* §§ 1010-11 (2013 & Supp. 2016). *See Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).

[5] *See, e.g., State v. Harper*, 2014 WL 1303012, at *5–7 (Del. Super. Mar. 31, 2014).

[6] 10 *Del C.* § 1011(b).

outlined in § 1011(b).

## *Discussion*

## I.  Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

The first § 1011(b) factor is two-pronged.  As to the nature of the present offense, the charges are both serious and violent and weigh in favor of remaining in this Court.  The second prong of this factor looks to Defendant's prior record.  The State argues that Defendant is tainted with a lengthy and violent juvenile record, with four adjudications that include two prior felonies.  In fact, it was while he was on a Level IV Home Pass that Defendant allegedly committed these offenses.

Defendant was twelve years and eleven months old when he first entered the juvenile justice system.  Therefore, his record spans two to three years within a relatively volatile and short timeframe while an adolescent.  Ms. Skinner testified that his prior criminal behavior and his inability to first adapt to his placement settings were attributable to Defendant's immaturity, and that while at Level IV and in detention, his responses have also demonstrated signs of growth.  Defendant's behavior aligns with what the Supreme Court of the United States has identified, in other contexts, as the "mitigating qualities of youth."[7]  Our Country's highest Court has increasingly recognized the juvenile's proclivity to act impulsively and irresponsibly due to innumerable intrinsic and extrinsic factors.[8]

---

[7] *Miller v. Alabama*, 132 S.Ct. 2455, 2467 (2012) (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)).

[8] *Roper v. Simmons* and its progeny reflect the greater attention that has been placed on the peculiarities inherent in juvenile conduct.  *See Roper v. Simmons*, 543 U.S. 551 (2005).  *See also Montgomery v. Louisiana*, 136 S.Ct. 718 (2016); *Miller*, 132 S.Ct. 2455; *Graham v. Florida*, 560 U.S. 48 (2010).  This Eight Amendment jurisprudence recognizes that juveniles possess a "lack of maturity and . . . underdeveloped sense of responsibility" that leads to reckless, impulsive, and heedless risk-taking.  *Roper*, 543 U.S. at 569 (quoting *Johnson*, 509 U.S. at 367).  They "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers.  *Id.* (citing *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)).  Juveniles have limited "control . . . over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings.  *Id.* (citing Laurence Steinberg & Elizabeth S. Scott, *Less Guilty by Reason of Adolescence: Developmental Immaturity, Diminished Responsibility, and the Juvenile Death Penalty*, 58 AM. PSYCHOLOGIST 1009, 1014 (2003)).  And because a child's character is not as "well formed" as an adult's, his traits are "less fixed" and his actions are less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.* at 570 (citing ERIK H. ERIKSON, IDENTITY: YOUTH AND CRISIS (1968)).

Ms. Skinner, who nevertheless considered his criminal record in detail, opined that Defendant is amenable to the rehabilitative processes of the Family Court.[9] This Court finds that as to the first factor, it splits in favor of both sides in that the first prong weighs in favor of keeping the charges in this Court and the second weighs in favor of transfer.

## II. Nature of Past Treatment and Defendant's Response

Defendant's family has been investigated by the Division of Family Services ("DFS") on three occasions, but only once involving Defendant. In that case, DFS concluded that Defendant's mother was not in need of any services and DFS closed the case as "unfounded for abuse."[10] As such, there is no history of past treatment until Defendant entered the juvenile justice system. Specifically, Defendant was unsuccessfully discharged from Wraparound Delaware following his first offense when he was just under thirteen.[11] Defendant subsequently responded positively to IOP services and additional support through VisionQuest, wherein he successfully completed Accountability and Community Service through them.[12] Although he was discharged unsuccessfully from other programs, including some at VisionQuest, it appeared he was making fair progress. His mother reported improved behavior both at school and home during various times of services, although Defendant exhibited negative behavior including school fights, suspensions and continued conflict in his home. Notably, both parents, Ms. Lewis and Mr. Palmer were present at the hearing.

The record reflects that between thirteen and fifteen years of age, although Defendant demonstrated poor judgment that often lead to criminal behavior, he has responded favorably to structured settings and behavioral programing. When placed at Standing Timbers (located 2 hours and 45 minutes from his home) at age fourteen years and nine months, although initially slow to adapt, the record shows that his behavior steadily improved. After his arrest over ten months ago, once placed at the

---

[9] Report of Jennifer Skinner, Master Family Service Specialist, YRS at 11 (submitted August 4, 2017).

[10] *Id.* at 1–2 (describing DFS involvement).

[11] *Id.* at 9.

[12] *Id.* at 9–10.

New Castle County Detention Center, he has also done well behaviorally and educationally, achieving the highest behavioral ranking in the center. Thus, Ms. Skinner maintained that Defendant is amenable to the Family Court.

No witnesses challenged Ms. Skinner's report or opinion. The Court finds that this factor weighs in favor of transfer.

## III. Interests of Society and Defendant

Ms. Skinner's report also states that the interests of society are best served by transferring the charges to Family Court, in part, because of Defendant's increasing maturity and positive response to services. She identified several targeted rehabilitative programs available to Defendant through the Ferris School as well as a list of community-based services. Her testimony also detailed the services available to Defendant through the Family Court and the efforts that could be made to provide him with the resources through age nineteen.[13]

The State argues that Defendant would likely recidivate and would not be deterred from re-offending in light of his criminal history, and that the interest of society is best served by keeping the case in this Court. This Court disagrees.

Even if adjudicated in the Family Court, Defendant is not spared prison time for his actions. He will face minimum mandatory imprisonment, but with the benefit of rehabilitative services to age nineteen through YRS.[14] Placing Defendant in adult prison without the benefit of targeted age-appropriate rehabilitative services runs against the interests of society. Therefore, this Court finds that this factor also weighs in favor of transfer.

### *Conclusion*

Defendant's young age and prior, albeit limited, positive responses to treatment suggest that transfer to the Family Court is appropriate. Though the nature of the charges is serious, all other § 1011(b) factors weigh in favor of allowing the

---

[13] *Id.*

[14] Additionally, the Family Court may extend jurisdiction over Defendant until age twenty-one. *See* 10 *Del. C.* §§ 928-29 (2013 & Supp. 2016).

Family Court to address Defendant's charges.[15] For the reasons stated above, Defendant's Motion is **GRANTED**.

## IT IS SO ORDERED.

Vivian L. Medinilla
Judge

oc:    Prothonotary
cc:    Investigative Service Office
       Jennifer Skinner, NCCDC

---

[15] For purposes of this analysis, the Court finds it unnecessary to analyze the miscellaneous fourth factor under of § 1011(b).