# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
                     )
                     )
                     )
v. )     I.D. No.:     1705006132
                     )                          1707007639
                     )
SHALEIR GRAHAM, )
                     )
     Defendant. )

## MEMORANDUM OPINION

Submitted: February 1, 2018
Decided: March 12, 2018

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**DENIED.**

Mark A. Denney, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for the State.*

Misty A. Seemans, Esquire & Tiffany Adams Anders, Esquire, Assistant Public Defenders, Office of Defense Services, Wilmington, Delaware. *Attorneys for the Defendant.*

**MEDINILLA, J.**

# INTRODUCTION

Shaleir Graham ("Defendant") faces two separate sets of adult charges from alleged violent conduct when he was fourteen years old.[1] His first set of charges include Robbery First Degree, Assault First Degree, Reckless Endangering First Degree, Endangering the Welfare of a Child, three counts of Possession of a Firearm During the Commission of a Felony, Possession or Control of a Firearm By a Prohibited Juvenile, and Possession of Ammunition by a Person Prohibited.[2] The second set of charges include Attempted Murder First Degree, Possession of a Firearm During the Commission of a Felony, two counts of Possession or Control of a Firearm by a Person Prohibited, and Possession or Control of Ammunition by a Person Prohibited.[3] All charges may be considered for transfer to Family Court under 10 *Del. C.* § 1011. Upon Defendant's Motion to Transfer, a reverse amenability hearing was held on December 20, 2017, where the Court deferred its decision pending completion of competency restoration, submitted on February 1, 2018. After consideration of the parties' submissions, oral arguments, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **DENIED**.

---

[1] Defendant's date of birth is November 3, 2002.

[2] *State v. Graham*, Crim. I.D. No. 1707007639, D.I. #16 (Del. Super. Ct. July 24, 2017).

[3] *State v. Graham*, Crim. I.D. No. 1705006132, D.I. #64 (Del. Super. Ct. May 15, 2017).

## FACTUAL AND PROCEDURAL HISTORY

Defendant has a significant juvenile criminal history in the Family Court, including six felony adjudications, two misdemeanor adjudications, twelve violations of probation, and numerous arrests. Defendant has been detained and participated in various programs through the Department of Services for Children, Youth, and Their Families, Division of Youth Rehabilitative Services ("YRS") with little success. While Defendant was on home monitoring for prior charges, he failed to charge his GPS ankle bracelet and ignored orders to do so from both Family Court and YRS. The allegations that bring Defendant to this Court stem from two incidents on April 16, 2017 and May 10, 2017, both while he was on home supervision and his GPS remained uncharged.

At the reverse amenability hearing on December 20, 2017, the State called Detective Flores ("Flores") to testify on behalf of the State as to Defendant's alleged conduct on April 16, 2017. Flores testified that Defendant allegedly used a firearm to rob, assault, and threaten the lives of a man and his nine-year-old daughter. The facts, if proven, are as follows:

While the father and daughter were walking from a store, they were approached by a group of young men, including Defendant. While robbing the father, they exchanged words, wherein father pleaded with Defendant to spare his daughter from the events that were unfolding and to let her leave. Defendant

3

allegedly pointed a handgun at the child's head and told the father, "f\*\*k your daughter." After ordering his daughter to run, the man was pistol-whipped by the Defendant in the back of the head and was punched and kicked by the other juveniles.

The man was treated in the Intensive Care Unit and had to be placed in a medically induced coma. Detective Flores later interviewed the man, who described his assailant's firearm as a chrome "old style cowboy" revolver with a white inlay. After a gun matching that description was recovered by Detective Pewitt ("Pewitt") from Defendant's residence, the assault victim was shown a photo array. The victim identified Defendant as the one who displayed the firearm and attacked him, and additionally pointed the firearm at his daughter.

Pewitt then testified on behalf of the State regarding the May 10, 2017 incident, where Defendant allegedly fired a handgun at a woman after she tried to stop an assault on her boyfriend by several juveniles, including Defendant. Two of the juveniles pulled out handguns and started firing upon the victims as they were attempting to run away. The victim stated that the shooters ran in to a residence that she believed to be owned by Defendant's mother and identified Defendant as the shooter. Defendant's mother consented to a search of the property and police located two handguns, including a chrome old style revolver with a white inlay.

4

Defendant moved to transfer his case to Family Court on June 2, 2017. A reverse amenability hearing was held on December 20, 2017.[4] The State called three witnesses: Detective Flores, Detective Pewitt, and Jennifer Skinner on behalf of YRS. Additionally, the parties stipulated to the introduction of two reports: a psychological report from Laura Cooney-Koss, Psy.D. and a second from Ms. Skinner on behalf of YRS. The Court also awaited a competency report that was pending at the time of the reverse amenability hearing but no longer at issue in this determination.[5] After considering the parties' submissions, arguments, and the evidence presented at the reverse amenability hearing, the matter is ripe for a determination on Defendant's Motion to Transfer.

## STANDARD OF REVIEW

The reverse amenability process is meant to identify those juveniles charged as adults who are amenable to the rehabilitative processes of the Family Court.[6] If

---

[4] The hearing was postponed due to Defendant's challenge of competency and to allow him time to participate in the competency restoration program.

[5] Defendant underwent a renewed competency evaluation on January 22, 2018, following completion of the Superior Court's competency restoration program. Amy Diehl Iannetta, Psy.D. concluded that Defendant presented as having the competency skills to stand trial in her report dated February 1, 2018.

[6] *See generally* 10 *Del. C.* §§ 1010-11 (2013 & Supp. 2016). *See Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).

the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[7]

Under § 1011(b), the Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;" (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;" (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court;" and any "other factors which, in the judgment of the Court are deemed relevant."[8]

## DISCUSSION

### *Fair Likelihood of Conviction*

Before the Court weighs these factors, however, "the Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile, meaning whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[9] There is a fair likelihood that the defendant will be convicted if, after reviewing the totality of the evidence presented, it appears that, if the defense does not sufficiently rebut the State's evidence, "the likelihood of a conviction is

---

[7] *See, e.g., State v. Harper*, 2014 WL 1303012, at *5–7 (Del. Super. Ct. Mar. 31, 2014).

[8] 10 *Del. C.* § 1011(b).

[9] *Harper*, 2014 WL 1303012, at *5 (citing *Marine*, 624 A.2d at 1185).

real. . . ."[10] Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[11]

The evidence against Defendant is strong. As to both sets of charges, the victims identify Defendant as the assailant. The second adult female victim places Defendant running into his mother's home. Through investigation, police conducted a consent search and located two firearms, including a chrome old style revolver with a white inlay. That firearm connects Defendant, or someone from Defendant's residence, to the first set of charges. The adult robbery victim described the very distinctive firearm and subsequently identified Defendant from a photo array.

Defendant argued there were potential credibility issues with the robbery victim because he may have entered into a plea agreement with the State for unrelated criminal conduct. Though there may prove to be fruitful grounds for the cross-examination of certain witnesses, at this point, there remains "[a] real probability . . . that a reasonable jury could convict [Defendant] on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted" at trial.[12] This Court finds that there remains a fair likelihood

---

[10] *State v. Mayhall*, 659 A.2d 790, 792 (Del. Super. 1995).

[11] *Id.*

[12] *Id.*

that Defendant will be convicted of the charged offenses.[13] Thus, the State has met its burden of demonstrating a *prima facie* case against Defendant with a fair likelihood of conviction at trial.

### *Weighing § 1011(b)'s Four Factors*

I.   **Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record**

The first § 1011(b) factor is two-pronged.[14] The first prong of the first factor inquiries into the nature of the present offense. For both sets of charges, the severity of the charged offenses is patent. Defendant's alleged behavior from April of 2017 shows particular depravity. Defendant made the conscious choice to switch from pointing a firearm at an adult while committing a robbery and allegedly pointed the firearm directly to the head of a nine-year-old child, stating "f**k your daughter." The acts, accompanied by the words, undoubtedly victimized both father and daughter. Additionally, Defendant's failure to charge his GPS monitoring unit

---

[13] Originally, this threshold analysis—the requirement that the State establish a *prima facie* case against the defendant at the reverse amenability hearing—derived from what is today the first prong of the § 1011(b): "nature of the present offense." *Marine v. State*, 607 A.2d 1185, 1211–12 (Del. 1992). This showing was analogized to a "proof positive" hearing. *Id.* "In each situation, a judicial examination of the evidentiary justification for the charging decision is required." *Id.* at 1212 (citing *In re Steigler*, 250 A.2d 379, 383 (Del. 1969)).

Though the statute has been amended on several occasions over the past twenty-five years, this requirement has endured. However, because this threshold analysis looks to the *charging* decision and its independent evidentiary basis, the viability of an anticipated topic of cross examination, such as the potential bias of a witness, is of questionable import.

[14] *See* § 1011(b)(1).

during the periods of time that correspond with these sets of crimes suggests purposeful planning. The Court therefore find that the first prong of the first factor weighs heavily against transfer.

Defendant has an extensive juvenile record, which reflects escalating impulsive and violent behavior. He first became active with YRS when he was twelve years of age, when he was placed on pre-trial supervision for felony charges of Robbery First Degree, Possession of a Firearm During the Commission of a Felony, Aggravated Menacing, Resisting Arrest, and Offensive Touching that occurred just before his twelfth birthday. Defendant was then adjudicated in February of 2015 of Receiving Stolen Property Under $1500. Defendant has chronically been unable to keep his GPS unit charged and comply with curfew restrictions.

Defendant was again arrested in June of 2015 on charges of Terroristic Threatening and Criminal mischief. The State later entered *nolle prosequi* on these charges as part of another plea agreement. Defendant was then placed at the New Castle County Detention Center ("NCCDC") in late June of 2015 on charges of Theft Under $1500, Conspiracy Third, and Criminal Trespass Second.

Defendant then escaped from a non-secure detention facility in July of 2015 and was charged with Escape Third Degree. Defendant was not arrested or detained on that charge until August of 2015, when he was charged with Failure to Appear

9

for an Arraignment on Theft Under $1500, Conspiracy Third, Criminal Trespass Second, and Violation of Probation ("VOP"). In October of 2015, Defendant was adjudicated of two felony counts of Receiving Stolen Property, Escape Third Degree, and Conspiracy Second.

Defendant faced a Robbery Second Degree charge in June of 2016, but this charge was later dismissed. He was found delinquent on a VOP for missing curfew in November of 2016. Another VOP was filed in December of 2016, after Defendant went missing for five days, and was found delinquent in January of 2017. Defendant then acquired an additional VOP and was found delinquent for going missing and not attending school in March of 2017. Yet another VOP was filed in April of 2017 for failing to charge his GPS unit, attend school, and abide by curfew. Defendant was then detained on the present charges in May of 2017 and has been held at the NCCDC since that time. Defendant participated in a group assault in December of 2017, and had—as of the date of his amenability hearing—not yet been charged for that incident.

The defense argues that Defendant's impulsivity and behavior are normal child-like qualities, and that this Court should be guided by what the Supreme Court of the United States has identified, in the Eighth Amendment context, as the

"mitigating qualities of youth."[15] Defendant's conduct goes beyond juvenile-like qualities. His reckless and volatile behavior may be impulsive but morphed into much more. This demonstrates that the rehabilitative efforts have not deterred him. Defendant will not easily or maturely transform into adulthood in Family Court. Thus, as to both prongs of factor one, the Court finds that they weigh against transfer.

## II. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

Defendant's involvement with the juvenile justice system is extensive. His recorded mental health history or treatment through Prevention Behavioral Health Services ("PBH") is limited. Defendant has been diagnosed with Bi-Polar II and Conduct Disorder, and is noted as having a history of Attention Deficit Disorder ("ADD") or Attention Deficit Hyperactivity Disorder ("ADHD"). Therefore, a review of his treatment is through the rehabilitative efforts of YRS, which unfortunately have not been successful.

After being adjudicated on his initial sets of charges in early 2015, Defendant initially did well on probation, was attending school, and working with VisionQuest to complete community service hours. However, starting in June of 2015, DFS received emergency custody of Defendant, following the incarceration of both his

---

[15] *Miller v. Alabama*, 567 U.S. 460, 476 (2012) (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)). *See also Montgomery v. Louisiana*, 136 S.Ct. 718 (2016); *Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551 (2005).

parents. Defendant was then placed with relatives. Defendant was later removed from this placement for hitting other children. Probation had difficulty staying in contact with him during this period.

The family was referred to Multisystemic Therapy ("MST") for family counseling, but the family cancelled both times that MST attempted to complete intake. Defendant was then subsequently placed at the NCCDC for a brief period of time on new charges in late June of 2015, and then placed at the Chris Sturmfels Youth Center on June 30, 2015. It was from this facility that Defendant escaped, after cutting the screen in his room and jumping out the window.

Defendant remained missing and with no treatment until he was detained at NCCDC on August 6, 2015. Defendant was then placed at Snowden Cottage on November 23, 2015. Records show that Defendant had significant difficulty adjusting to their programming. He was placed on Administrative Intervention "A.I" status on two occasions for defiant and aggressive behavior. After placement on a behavioral plan, Defendant began to show more positive behavior. Defendant was successfully discharged on February 24, 2016.

Defendant initially did well on probation. Defendant and his family were participating in MST and having success. However, then Defendant was wanted on a warrant and Defendant failed to appear in Family Court. He was then subsequently

arrested and detained at People's Place, a non-secure detention facility on June 26, 2016. Defendant remained there until August 23, 2016.

Defendant has a history of non-compliance with probation, being found delinquent of three VOPs and having a fourth filed at the time he was detained for the present charges. Defendant frequently went missing, sometimes for extended periods of time, missed curfew, and failed to attend school. Defendant was also not compliant with charging his GPS unit. It was during this time of noncompliance that Defendant allegedly committed these offenses. Finally, a DFS treatment team was opened on May 24, 2017 and remains open currently. Defendant has largely been compliant with treatment while detained, but as noted earlier, did participate in a group assault at NCCDC in early December of 2017.

Defendant has received extensive treatment and support over the past two or so years and continues to reoffend, with escalating violent behavior. As highlighted by the State, Defendant was previously on the highest form of probation supervision, including GPS monitoring, when he allegedly committed the present offenses. Additionally, Defendant's current behavior at NCCDC remains of some concern.

Although Ms. Skinner and Laura Cooney-Koss, Psy.D. opine that Defendant is amenable to Family Court, this Court finds that Defendant has not responded well to treatment as ordered by Family Court. This Court finds that the second factor weighs against transfer.

13

## III.  Section 1011(b) Factor Three: Interests of Society and Defendant

The State argues that numerous programs have failed to serve as adequate safeguards to the community and as corrective measures for the Defendant. The Court agrees. Defendant faces several felony offenses and has significant criminal history. His violent behavior has escalated. He has escaped from facilities, fails to comply with their rules, and repetitively violated the terms of his probation. Although there are likely more programs that may assist Defendant, it is in the best interest of society to keep him in this Court. Even though it may be in the best interest of Defendant to return to Family Court for some servicing, their services have not worked. The prognosis is poor and he will transition erratically into adulthood if not monitored. This Court finds that the interests of society weigh against a transfer.[16]

## CONCLUSION

Under § 1011(b), the Court finds that the nature of the present offense and the extent and nature of the Defendant's both weigh against transfer. The nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto also weighs against transfer. The Court also finds that the interests of society and

---

[16] The fourth factor of § 1011(b)—other relevant factors the Court deems relevant—has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in its opinion.

14

the Defendant weigh against transfer. For the reasons stated above, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

_____
Judge Vivian L. Medinilla

oc:   Prothonotary
cc:   Defendant
      Jennifer Skinner, Master Family Service Specialist