# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
)
v. ) I.D. Nos.: 1907010092
) 1907015856
)
DEVANTE WISHER, )
)
Defendant. )

## MEMORANDUM OPINION

Submitted: February 5, 2020
Decided: February 28, 2020

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**DENIED.**

Erika Flaschner, Esquire, and Jillian Schroeder, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware. *Attorneys for the State.*

Cathy Johnson, Esquire and Charles Tate, Esquire, Assistant Public Defenders, Office of Defense Services, Wilmington, Delaware. *Attorneys for the Defendant.*

**MEDINILLA, J.**

## INTRODUCTION

Davante Wisher ("Defendant") faces charges in this Court for Attempted Murder in the First Degree, Possession of a Firearm During the Commission of a Felony, Possession or Control of a Firearm (Handgun) by a Prohibited Juvenile, Drug Dealing, Disregarding a Police Officer's Signal, Resisting Arrest, and Attempted Carjacking First Degree. After consideration of the parties' submissions, oral arguments, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **DENIED**.

## PROCEDURAL HISTORY

Defendant has remained in detention since July 24, 2019. He will be eighteen-years-old on March 11, 2020 and filed a Motion to Transfer his Case to Family Court. A reverse amenability hearing was held on February 5, 2020. In the middle of the hearing, it was learned that Defense counsel may pursue further evaluation of Defendant. Regardless of the results of any further psychological evaluations, this Court is satisfied that the matter is ripe for review following the submissions, arguments, and evidence presented at the reverse amenability hearing.

## STANDARD OF REVIEW

The reverse amenability process is meant to identify those juveniles charged as adults who are amenable to the rehabilitative processes of the Family Court.[1] Where Defendant filed his motion to return to Family Court, this Court must hold a reverse amenability hearing and weigh four factors set forth in 10 *Del. C.* § 1011(b).[2] The Court considers (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;" (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;" (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court;" and any "other factors which, in the judgment of the Court are deemed relevant."[3]

## DISCUSSION

### *Fair Likelihood of Conviction*

Before weighing the Section 1011(b) factors, the "Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile[.]"[4] The Court considers "whether there is a fair likelihood that [the defendant] will be

---

[1] *See generally* 10 *Del. C.* §§ 1010-11 (2013 & Supp. 2016). *See Hughes v. State,* 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State,* 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State,* 607 A.2d 1185, 1209 (Del. 1992)).
[2] *See, e.g., State v. Harper,* 2014 WL 1303012, at *5–7 (Del. Super. Ct. Mar. 31, 2014).
[3] 10 *Del. C.* § 1011(b).
[4] *Harper,* 2014 WL 1303012, at *5 (citing *Marine v. State,* 624 A.2d 1181, 1185 (Del. 1993)).

convicted of the crimes charged."[5] Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[6] Since Defendant is over the age of sixteen and also charged for Possession of a Firearm During Commission of a Felony, 11 *Del. C.* § 1447A(f)[7] requires the Court to make a finding of proof positive or presumption great that the accused used, displayed or discharged a firearm during the commission of a felony. This provision entitles a juvenile defendant to an evidentiary hearing and allows the firearm charge to return to Family Court if the State cannot meet its burden.[8] The proof positive or presumption great standard is commonly understood as whether "after [a] full hearing 'there is good ground to doubt the truth of the accusation.'"[9] If so, then "the Court in its discretion [may] conclude[] from the evidence that the State does not have a fair likelihood of convicting the accused of the . . . offense."[10]

---

[5] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[6] *Id.*
[7] 11 *Del. C.* § 1447A(f) provides "Every person charged under this section over the age of 16 years who, following an evidentiary hearing where the Superior Court finds proof positive or presumption great that the accused used, displayed, or discharged a firearm during the commission of a Title 11 or a Title 31 violent felony as set forth in § 4201 (c) of this title, shall be tried as an adult, notwithstanding any contrary provisions or statutes governing the Family Court or any other state law. The provisions of this section notwithstanding, the Attorney General may elect to proceed in Family Court."
[8] *See id.*
[9] *See In re Steigler*, 250 A.2d 379, 382 (Del. 1969) (internal quotations omitted).
[10] *Id.* at 383.

To meet its burden under 11 *Del. C.* § 1447A(f), and establish its *prima facie* case, the State presented two law enforcement officers, Detective Douglas Rivell and U.S. Marshal Detective Robert DiRocco. Detective Douglas Rivell testified that he responded to a shooting that occurred on June 29, 2019 between Gordon Street and E. 23rd Street. The officer observed a parked vehicle with blood on or near the vehicle, and a victim who had suffered a gunshot wound to the back, requiring emergency surgery and critical condition admission to the hospital. The investigation of spent shell casings were consistent with the injuries suffered by the victim.

Detective Rivell searched the victim's car and found 110 bags of heroin labeled "Hulk." He interviewed the victim at the hospital who testified that he contacted Defendant to purchase drugs. The victim provided the call log from his cell phone, revealing evidence of calls between victim and a phone number associated with Defendant's grandmother. The detective testified that Defendant had given this cell phone number with his pedigree information from a prior New Castle County police arrest. The State further presented evidence of drug-related communications between Defendant and the victim via text and cell phone messages.

The victim testified that he was angry about the quality of the drugs given to him by Defendant. He told police that he observed Defendant retrieve a gun from a

5

nearby maroon vehicle. The victim said he then ran and was shot in the back. Through investigation, a red Nissan Sentra is captured on footage in the area of the shooting. The vehicle is also registered to Defendant's grandmother.

Surveillance footage taken from the area at the time of the shooting captures images of five men; one dressed in a black t-shirt, as described by the victim. The five men are seen to be exiting an alley within the proximity of the shooting, and the male in the black t-shirt to be adjusting his waistband. Witnesses in the area were familiar with three of the five men, as having previously purchased drugs from them, and were identified as going by the names of Nye, Chao, and Star. Through investigation, Star has been determined to be Defendant. One witness later identified Defendant by nickname as the individual who was wearing a black t-shirt, known as Star. An arrest warrant was issued and it was learned that Defendant was a person prohibited. Unable to locate Defendant, Detective Rivell engaged the U.S. Marshall Fugitive Task Force.

U.S. Marshal Detective Robert DiRocco testified that he works for the Wilmington Police Department ("WPD") and is assigned to this task force to apprehend violent felons. On July 23, 2019, while in an undercover vehicle at the West Motel located in New Castle County, he set up surveillance and observed the red Nissan registered to Defendant's grandmother. He observed Defendant exit a

motel room and when the Defendant began driving with an unknown male passenger, the detective called for assistance to follow.

The detective described how Defendant evaded arrest. When the officers attempted to conduct a stop in the area of Routes 40 and 13, activating both lights and sirens, Defendant struck the officers' vehicles by putting the red Nissan in reverse gear. They remained in pursuit for approximately five minutes and noticed the passenger toss what later turned out to be heroin out the window. On Airport Road, Defendant crashed into Detective DiRocco's vehicle, causing Defendant's car to become inoperable. Defendant next fled on foot and attempted to jump into three civilian vehicles stopped at a stoplight on the road. When his efforts failed, he ran into a residential neighborhood and allegedly assaulted a woman as he attempted to pull her out of her vehicle with her eight/nine year old child in the back seat. Officers were able to stop him with the help of a taser gun. Defendant vomited, and was taken into custody.

This Court finds that there remains a fair likelihood that Defendant will be convicted of the charged offenses. Thus, the State has met its burden of demonstrating a *prima facie* case against Defendant with a fair likelihood of conviction at trial. The State has also established proof positive or presumption great that Defendant used, displayed or discharged a firearm during the commission of a

felony under 11 *Del. C.* § 1447A(f). Therefore, the PFDCF must stay in this Court. With that in mind, the Court weighs the § 1011(b) factors.

## I.    Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

The first § 1011(b) factor inquiries into the nature of the present offense. Defendant's alleged behavior demonstrates a conscious decision to shoot an individual in the back after a drug deal went south. He then hid from police, evaded them when found with continuous reckless behavior that endangered people in his path until finally apprehended.

Defendant's criminal history is lengthy.[11] At seventeen, he has been charged with numerous drug and weapon offenses, including felony offenses in June 2017

---

[11] On April 27, 2016, Defendant was adjudicated of Theft of a Motor Vehicle and Assault Second in Maryland Family Court. On July 18, 2016, Defendant was charged with Shoplifting. On December 21, 2016, Defendant was arrested for Burglary Third Degree and Criminal Impersonation. On February 6, 2017, Defendant was adjudicated of Theft under $1,500 and Shoplifting under $1,500. He was sentenced to twelve months of one-on-one community supervision. On June 26, 2017, Defendant was arrested for Drug Dealing, and Possession of Drug Paraphernalia. On December 11, 2017, Defendant was adjudicated delinquent of Possession of Marijuana (a lesser included offense) and Possession of Drug Paraphernalia. Defendant was ordered to complete another twelve months of community supervision. On July 13, 2018, Defendant was arrested for charges of Possession, Purchase, Own or Control of a Firearm or Ammunition by Person Prohibited, and Carrying a Concealed Deadly Weapon Firearm. On November 30, 2018, Defendant was charged with Possession/Consumption of Marijuana and Possession of a Controlled Counterfeit Substance. Released on unsecured bail, the Family Court ordered community based supervision and services through Vision Question. On December 11, 2018, Defendant successfully completed his probation. On June 4, 2019, Defendant was charged with two counts of Manufacturing, Delivering, or Possession with Intent to Manufacture a Controlled Substance, Possession of a Controlled Substance in a Tier 1 Quantity, Criminal Impersonation, Possession of Marijuana, Driving Without a License, and Inattentive Driving. Defendant was released with Pre-Trial Supervision and GPS monitoring. On June 26, 2019, Defendant was listed as AWOL from supervision.

8

for Drug Dealing and in July 2018 for Possession of a Firearm by a Person Prohibited and Carrying a Concealed Deadly Weapon. In June of 2019, he was, again, arrested for multiple counts of Drug Dealing that remain pending in Family Court.

As to both prongs, this factor weighs against transfer.

## II. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

Defendant's lengthy and varied criminal history demonstrates that numerous attempts at supervision and rehabilitative efforts have failed. Robert G. Thompson, Psy.D. testified on behalf of Defendant. Navigating through his fourteen-page report, he opined that he should remain in the Family Court with rehabilitation deemed "favorable within the juvenile justice system."[12] This opinion was based on examinations conducted on November 21, 2019 and December 12, 2019, and without jurisdictional or legal considerations of his charges.

Notably, Defendant has an IQ of 53 that according to Dr. Thompson is indicative of more than a scattered education caused by poor school attendance. Since he has not received services through the Youth Rehabilitative Services' ("YRS") sister Division of Prevention and Behavioral Health Services, there are no records regarding the extent of mental health issues he may have. It is also unclear at what grade school level he is currently learning. What is clear is that Defendant

---

[12] *See* Dr. Thompson's Forensic Psychological Report at page 12.

has experienced various sources of trauma, including but not limited to, homelessness and domestic violence. Defendant has not received services through residential facilities such as Level IV Molds or Molden Cottages, or the Level V Ferris School.

To date, he appears to do well in a structured environment, earning the highest behavioral status at the detention center. Jennifer Wilson and Jennifer Skinner indicate that Defendant has had some success with Vision Quest services (ART program), has successfully completed substance abuse counseling at Aquila, and has successfully completed his Delaware probation. However, they also highlight that following these seemingly successful efforts, Defendant has re-offended and acquired more serious drug related and felony charges.

He has failed to comply with terms of community supervision, obeying curfew, attending rehabilitation and educational programs, and his obligations related to GPS monitoring. Furthermore, he was AWOL from supervision when the alleged Attempted Murder charges occurred. YRS recommends Defendant be found non-amenable and remain in this Court. This Court agrees. Where Defendant will be eighteen-years-old in March 2020, and YRS can only provide services until age nineteen, he needs more structure beyond age nineteen. This factor weighs against transfer.

III.    Section 1011(b) Factor Three: Interests of Society and Defendant

After multiple rehabilitative efforts and services, Defendant's violent behavior has escalated despite efforts from YRS and the Family Court. The various youth programs have not worked. Lesser sanctions through Family Court have also failed. The Court finds that the interests of society and Defendant weigh against a transfer.[13]

## CONCLUSION

Under § 1011(b), the Court finds that all factors weigh against transfer. For the reasons stated above, Defendant's Motion is **DENIED**. His charges will remain in this Court where he can transition into adulthood with the necessary resources that the Family Court will soon be unable to provide.

**IT IS SO ORDERED.**

Judge Vivian L. Medinilla

oc: Prothonotary
cc: Defendant

---

[13] The fourth factor of § 1011(b)—other relevant factors the Court deems relevant—has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in this ruling.

11