# IN THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. ) Crim. ID No. 2011008832
)
KIRISTEN MAYS-ROBINSON, )
)
Defendant. )

## ORDER

Submitted: August 17, 2021
Decided: August 18, 2021

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**GRANTED.**

Amanda D. Buckworth, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware. *Attorney for State*.

Kimberly A. Price, Esquire, Collins & Associates, Wilmington, Delaware. *Attorney for Defendant.*

**MEDINILLA, J.**

1

## I.  INTRODUCTION

1.  At 15,[1] Defendant Kiristen Mays-Robinson stands accused of two counts of Robbery First Degree, Possession of a Firearm During the Commission of a Felony (PFDCF), Possession, Purchase, Own or Control of a Firearm by a Prohibited Juvenile, Possession of a Weapon with a Removed, Obliterate or Altered Serial Number, Receiving a Stolen Firearm, Conspiracy Second Degree, and Receiving Stolen Property Over $1,500.[2]  It is alleged she committed these offenses when she was 14.  She seeks to transfer her charges to Family Court under 10 *Del. C.* § 1011.  A reverse amenability hearing was held on August 17, 2021.  Upon consideration of the parties' submissions, oral argument, and the record in this case, Defendant's Motion to Transfer Charges to Family Court is **GRANTED.**

## II.  FACTUAL AND PROCEDURAL HISTORY[3]

2.  On November 19, 2020, New Castle County Police responded to a robbery that had occurred in the area of Lighthouse Road and Haines Avenue in Wilmington.  At approximately 5:50 p.m., Norman Seltzer (Victim) had parked his vehicle in that area.  While sitting in his car, Victim observed a black Toyota Prius enter the intersection, turn around and head in his direction.

---

[1] Defendant's date of birth is November 28, 2005.
[2] Indictment, True Bill Filed No. 41, *State of Delaware v. Kiristen Mays-Robinson*, Crim. ID No. 2011008832, D.I. 2 (Del. Super. Ct. Apr. 26, 2021).
[3] This recitation is based upon oral argument and evidence presented at the reverse amenability hearing on Defendant's Motion to Transfer on August 17, 2021.

3. Victim exited his vehicle as the Toyota Prius approached him and noticed a black female wearing a surgical mask driving the Prius. The Prius stopped and he then saw a second black female exit the vehicle from the rear passenger seat. That female approached him, pointed a silver handgun, and demanded the keys to his car.

4. Upon command, Victim dropped his keys, wallet, phone and laptop bag containing a laptop and fled behind a nearby car, and then observed the suspects retrieved the same. Victim reported the incident to Delaware State Police.

5. Soon thereafter, State Police observe a Toyota Prius parked at a gas station on Philadelphia Pike in Claymont Delaware. The vehicle had been reported stolen to police two days prior on November 17. Police stopped the vehicle, and three individuals fled from the car. Two of them were eventually located and arrested, including Defendant and Ericka Miller (Miller.)

6. During a search incident to arrest, Victim's cell phone is found in Defendant's pocket and a black and silver Smith & Wesson .40 caliber handgun with an extended magazine and obliterated serial number is found inside the vehicle. The handgun was later determined to have been stolen.

7. During a post-miranda interview, Defendant admitted to intentionally robbing Victim. Defendant also stated she was aware of the handgun in the vehicle,

but claimed she did not possess it, although she did admit to having possessed it previously. Defendant also admitted to knowing that the Toyota Prius was stolen.

8.      Police also conducted a post-miranda interview with Miller who told police they had planned to rob Victim and that it was Defendant who used the handgun during the robbery.

### III.   STANDARD OF REVIEW

9.      The reverse amenability process is meant to identify juveniles charges as adults who are amenable to the rehabilitative process of the Family Court.[4] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the four factors set forth in 10 *Del. C.* § 1011(b).[5] The Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;"[6] (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;"[7] (3) "[w]hether the interests of society and the defendant would be best served by trial in the Family Court or in the Superior Court[;]"[8] and (4) any "other factors which, in the judgment of the Court are deemed relevant."[9]

---

[4] *See generally* 10 *Del. C.* §§ 1010-11; *see also Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).
[5] *See, e.g.*, *State v. Harper*, 2014 WL 1303012, at *5-7 (Del. Super. Mar. 31, 2014).
[6] 10 *Del. C.* § 1011(b)(1).
[7] *Id.* at § 1011(b)(2).
[8] *Id.* at § 1011(b)(3).
[9] *Id.* at § 1011(b).

## IV. DISCUSSION

### A. Fair Likelihood of Conviction

10. Before weighing the § 1011(b) factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile."[10] The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[11] Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[12] Since Defendant was 14 at the time of the alleged offenses, the Court need not consider the applicability of 11 *Del. C.* § 1447A(f) as to the firearm charges.

11. As noted at the Reverse Amenability hearing on August 17, as to the Robbery First Degree and accompanying charges, at this juncture, a reasonable jury could convict on the totality of the evidence assuming that State's evidence stood unrebutted. Defendant admitted she intended to and did rob Victim along with Miller. Defendant was aware the .40 caliber handgun was in the vehicle, and while she denies using it, Miller told police that it was Defendant who used and displayed the gun during the robbery. Defendant also admitted to possessing the firearm in the

---

[10] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[11] *Id.*
[12] *Id.*

5

past. Further, Defendant was also aware and admitted that the Toyota Prius she was in was a stolen vehicle. After reviewing the totality of the evidence presented, there is a fair likelihood that Defendant would be convicted of the charged offenses. For these reasons and those stated on the record, the State has established its *prima facia* case with a fair likelihood of conviction at trial.

## B. Weighing § 1011(b)'s Four Factors

12. The purpose of "determining a juveniles amenability is to place a judicial check on the prosecutorial charging of juveniles."[13] However, 10 *Del. C.* § 1010 states that when a juvenile is charged with the crime of Robbery First Degree where such offense involves the display of what appears to be a deadly weapon, among others, a child shall be proceeded against as an adult.[14] Therefore, "since a juvenile charged with a designated felony in the Superior Court has lost the benefit of Family Court adjudication by statutory pronouncement, there is a presumption that need exists for adult discipline and legal restraint. Hence, the burden is upon the juvenile to demonstrate to the contrary."[15] In considering whether the factors weigh in favor of transfer, Defendant meets her burden.

---

[13] *Harper*, 2014 WL 1303012, at *4 (citing *State v. Anderson*, 697 A.2d 379, 383 (Del. 1997)).
[14] *See* 10 *Del. C.* § 1010(a)(1).
[15] *Harper*, 2014 WL 1303012, at *4 (quoting *Anderson*, 385 A.2d at 740) (internal quotations omitted); *see also State v. Mayhall*, 659 A.2d 790, 795 (Del. Super. 1995) ("I also take into consideration the fact that by including second degree murder in those offenses where original jurisdiction has been conferred on the Superior Court under 10 *Del. C.* § 1010 the legislature has created a rebuttable presumption that juveniles charged with that crime should be tried as adults and the burden of proof rests with each defendant to rebut that presumption.").

### 1. Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record

13.     The first § 1011(b) factor is two pronged.[16]  The charges against Defendant are violent and serious and weigh against transfer.  The second prong also weighs against transfer.  Defendant has previously been adjudicated delinquent for charges of Conspiracy, Burglary, and Assault.  Defendant then was later adjudicated delinquent for violating the conditions of her probation and she picked up charges for Receiving Stolen Property soon after.  For these reasons, both prongs weigh against transfer.

### 2. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

14.     Defendant has never been placed in a Level IV or V facility, but she has received services from YRS in the past.  Defendant has been placed on GPS monitoring on multiple occasions with inconsistent results when it comes to following guidelines set forth by her probation officer.  Defendant was also placed on Pre-Trial Services between October 2019 and July 2020 but was arrested multiple times during that span.

15.     Defendant was sentenced in July 2020 to community supervision with a YRS probation officer.  During that time Defendant received multiple assessments which placed her at low to moderate risks for reoffending.  The assessments noted

---

[16] *See* 10 *Del. C.* § 1011(b)(1).

that Defendant was in most need of treatment for Relationships, Mental Health, Employment and Family & Social Support.

16. Defendant has spent time in non-secure detention facilities including Vision Quest RAD where overall she did well. While at RAD, Defendant had positive behaviors and was completing schoolwork. Following her arrest for these charges, Defendant has been detained at the New Castle County Detention Center where she has maintained a positive attitude and achieved (lost and regained) gold shirt status.

17. Laura Cooney-Koss, Psy.D. testified on behalf of Defendant. Dr. Cooney-Koss opined that Defendant had been "profoundly impacted by her history of sexual abuse" for which she had never been treated.[17] Dr. Cooney-Koss also stated that Defendant qualified for several psychiatric diagnoses, including Posttraumatic Stress Disorder, Schizoaffective Disorder, Bipolar Type, Attention Deficit/Hyperactivity Disorder, Generalized Anxiety Disorder, Cannabis and Tobacco Use Disorder, and Specific Learning Disorder.[18]

18. Dr. Cooney-Koss opined it "is imperative that [Defendant] receive individual mental health treatment, with a specific focus on her trauma history."[19] Dr. Cooney-Koss also noted that while Defendant has received some intervention

---

[17] Psychological Evaluation by Laura Cooney-Koss, Psy.D., at 20 (June 2, 2021).
[18] *Id.* at 20-21.
[19] *Id.* at 21.

from YRS, none of them have been therapeutic interventions which she believes are most critical to address Defendant's needs.

19.     YRS testified for the State.  However, YRS concurred with Dr. Cooney-Koss that the Department of Services for Children, Youth & their Families (DSCYF,) and specifically, YRS, could continue to provide services to Defendant through the Family Court.  Both Dr. Cooney-Koss and YRS representative, Gabrielle Casarino, testified and submitted their respective reports supporting their positions that Defendant is amenable to the services of Family Court.  Therefore, this factor weighs in favor of transfer.

### 3. Section 1011(b) Factor Three: Interest of Society and Defendant

20.     Defendant has not been placed in a Level IV or Level V Family Court facility.  It appears that Defendant has done well in a structured environment and YRS has indicated that it can provide future services to Defendant.  Moreover, this Court notes that Defendant has had open files with not only YRS but her family has had open cases from 2005 since her birth.[20]  Cases were subsequently open during Defendant's lifetime through DFS but Prevention and Behavioral Health Services (PBH), as well.[21]  Per Dr. Cooney-Koss, Defendant requires a high level of interventions that can best be provided through multi-disciplinary approaches.  The

---

[20] DYRS Reverse Amenability Report by Gabrielle Casarino, at 1 (July 26. 2021).
[21] *See generally, id.* at 1-3.

State did not provide any evidence to suggest that the same needs could be met in the adult system. Therefore, it is in Defendant's best interest as well as society's to employ such services and allow her an opportunity to take advantage of what may be of benefit to her through Family Court.[22]

## V.   CONCLUSION

Under § 1011(b), the Court finds that the factors weigh in favor of transfer. For the reasons stated above, Defendant's Motion to Transfer Charges to Family Court is **GRANTED.**

**IT IS SO ORDERED**

/s/ Vivian L. Medinilla
Judge Vivian L. Medinilla

oc:   Prothonotary
cc:   Defendant
        Department of Justice
        Kimberly Price, Esquire

---

[22] The fourth factor of § 1011(b) – other factors the Court deems relevant – has been sufficiently addressed in the other § 1011(b) factors such that the Court need not explicitly address this factor in this ruling.