# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                                  )
       v.              )      I.D. No. 2208010160
                                  )
XAVIER CARTER-BAIRD ,   )
                                  )
      Defendant.      )

Submitted: March 5, 2024
Decided: March 7, 2024

*Upon Defendant Xavier Carter-Baird's Motion for Reverse Amenability Hearing Pursuant to 10 Del. C. § 1011*

**DENIED.**[1]

## **ORDER**

Zachary D. Rosen, Esquire, Christina R. Wroten, Esquire, Deputy Attorneys General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, DE 19801, Attorney for the State of Delaware.

Monika G. Germono, Esquire, Tiffany Anders, Esquire, Lauren N. Brown, Esquire, Assistant Public Defenders, OFFICE OF DEFENSE SERVICES, 820 North French Street, Wilmington, DE 19801, Attorneys for Defendant Xavier Carter-Baird.

**WHARTON, J.**

---

[1] The Defendant was afforded a reverse amenability hearing. The motion actually seeks to transfer his charges to the Family Court.

This 7th day of March 2024, upon consideration of Defendant Xavier Carter-Baird's Motion for Reverse Amenability Hearing Pursuant to 10 *Del. C.* § 1011, it appears to the Court that:

1.     Defendant Xavier Carter-Baird ("Carter-Baird") is charged by indictment with Murder in the First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), and Possession of a Firearm by a Person Prohibited ("PFBPP").[2]  The offenses are alleged to have occurred on August 14, 2022.[3]  Carter-Baird was born in March 2007, making him just under 15 ½ years old at the time of the offenses.  He seeks to transfer these charges to Family Court under 10 *Del. C.* § 1011.  A combined competency and reverse amenability hearing was held on January 4, 2024.  At the conclusion of the hearing, the Court issued a bench ruling finding Carter-Baird competent to stand trial.[4]  The parties requested that the Court defer deciding the reverse amenability issue in order to give Carter-Baird an opportunity to consider the State's plea offer.  On March 5, 2024 the parties reconvened for Carter-Baird's plea decision.  Carter-Baird expressed uncertainty about whether to accept the plea offer, in part because of the unresolved amenability issue.  In order to assist him in making his decision, the Court advised Carter-Baird

---

[2] Indictment, D.I. 2.
[3] *Id.*
[4] Tr. Rev. Amen. Hr'g. (Jan. 4, 2024) (hereafter "Tr.") at 211-216.

that it would deny his request to have the case decided in the Family Court. Carter-Baird ultimately did not accept the State's plea offer. This Order explains the Court's amenability decision.

2.    Testifying at the hearing for the State on the amenability issue were Det. Justin Kane ("Det. Kane") of the Wilmington Police Department, and Anna Gianforcaro ("Off. Gianforcaro"), a Master of Family Services with juvenile probation at the Department of Youth Rehabilitative Services ("YRS"). Carter-Baird presented the testimony of Robin Belcher-Timme, Psy.D, ("Dr. Timme") who testified both as to competency and amenability. Stephen Mechanick, M.D. ("Dr. Mechanick") testified in rebuttal for the State on both issues. The Court received into evidence the reports of Dr. Timme, Dr. Mechanick, and Off. Gianforcaro.

3.    Carter-Baird is charged with the murder of Marell Lowe ("Lowe") on August 14, 2022.[5] The murder occurred in the area of 23rd and Monroe Streets in Wilmington.[6] The State relies on the testimony of Det. Kane to establish a *prima facie* case against Carter-Baird. Much of Det. Kane's testimony involved narrating events captured on a number of surveillance cameras. Those cameras showed a group of individuals that included Carter-Baird before the murder and walking to were the murder occurred. The murder itself also was captured on video.

---

[5] Indictment, Count 1, D.I. 2.
[6] Tr. at 8.

4. Video was obtained from surveillance cameras at a Citgo gas station on the north side of Concord Avenue at Monroe Street.[7] The first camera showed people entering the front door of the Citgo at 9:29 p.m.[8] The group consisted of five males and two females, all wearing different clothing, and all identified by name by Det. Kane.[9] The entire group left the Citgo and were seen on exterior cameras walking through the parking lot.[10] The group was seen next from a camera at Concord Liquors at the corner of Concord Avenue and Monroe Street, across the Concord Avenue from the Citgo, walking into the 2300 block of North Monroe Street at 9:43 p.m.[11] The group is seen next on video from two residential cameras on Monroe Street.[12] One of them shows Lowe, who is wearing a reflective vest.[13] Based on what he was wearing, Det. Kane identified Carter-Baird standing next to a fire hydrant.[14] The video showed the actual shooting taking place.[15] One shooter, co-defendant Jhaivon Carter, advanced forward towards Lowe and fired from near the northwest corner of 23rd and Monroe Streets.[16] A second shooter, Carter-Baird, firing from a different location, shot three times.[17] The shooters were about 25 to 30

---

[7] *Id.* at 11.
[8] *Id.*
[9] *Id.* at 11-16.
[10] *Id.* at 16-17.
[11] *Id.* at 18-19.
[12] *Id.* at 20.
[13] *Id.* at 22.
[14] *Id.* at 22-23.
[15] *Id.* at 24
[16] *Id.* at 24-25.
[17] *Id.* at 25.

feet from each other.[18] Lowe was struck several times, but his death was caused by a gunshot to his head.[19] Seven shell casings were found near where Jhaivon Carter was seen firing, but none were found near Carter-Baird's location.[20]

5.      While juvenile crimes are usually handled in Family Court, this Court may take jurisdiction over juveniles over the age of 12 and under the age of 16 only when they are alleged to have committed certain enumerated crimes.[21] These crimes include, as here, Murder in the First Degree.[22] Despite having jurisdiction, this Court has the discretion to transfer these charges to Family Court if it finds such a transfer to be in the interest of justice.[23] The reverse amenability process is meant to identify juveniles charged as adults who are amenable to the rehabilitative process of the Family Court.[24] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the factors set forth in 10 *Del. C.* § 1011(b).[25]

---

[18] *Id.* at 43.

[19] *Id.* at 27, 48.

[20] *Id.* at 29, 31.

[21] 10 *Del. C.* 1010(a)(5).

[22]  *Id.*

[23] 10 *Del. C.* §1011(b).

[24] *See generally* 10 Del. C. §§ 1010-1011; *see also Hughes v. State*, 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State*, 624 A.2d 1181, 1184 (Del. 1993); *Marine v. State*, 607 A.2d 1185, 1209 (Del. 1992)).

[25] *See, e.g., State v. Harper*, 2014 WL 1303012, at *5-7 (Del. Super. Ct. Mar. 31, 2014).

6.     The purpose of a reverse amenability hearing is to place a judicial check on the prosecutorial charging of juveniles.[26]  Before addressing § 1011(b)'s factors, "this Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile[.]"[27]  The Court considers "whether there is a fair likelihood that [the defendant] will be convicted of the crimes charged."[28]  Furthermore, "[a] real probability must exist that a reasonable jury could convict the juvenile based on the totality of the evidence, assuming that the evidence introduced at the [reverse amenability] hearing is unrebutted by the juvenile at trial."[29]

7.     Based on the evidence in its totality presented at the reverse amenability hearing, the Court finds that there is a real probability that a reasonable jury could find Carter-Baird guilty of all charges.  Video surveillance captures him shooting three rounds at Lowe.  Although, based on the positions of the shooters in relation to Lowe, the Court finds it more likely that the fatal shot came from the firearm of Carter-Baird's co-defendant, the evidence presented at the reverse amenability hearing did not conclusively establish that fact.  But, who fired the round(s) that actually killed Lowe  is not dispositive of Carter-Baird's guilt.  Both shooters manifested an intent to kill Lowe and aided and abetted each other in accomplishing

---

[26] *See State v. Anderson*, 697 A.2d 379, 383 (Del. 1997) (citations omitted).
[27] *Harper*, 2014 WL 1303012, at *5 (citing *Marine v. State*, 624 A.2d 1181, 1185 (Del. 1993)).
[28] *Id.*
[29] *Id.* (citation omitted).

that end. It does not matter who is the principle and who is the accomplice in determining guilt.[30]

8.     The first factor under § 1011(b) is the nature of the present offense and the extent and nature of the defendant's prior record. This factor is two-pronged.[31] Here, the charges are violent and serious. There is no more serious charge under the law than Murder in the First Degree. The killing here appeared to be without motive, although the Court suspects there was one. Certainly, there is nothing in the surveillance videos that would warrant Carter-Baird and Jhaivon Carter opening fire and directing multiple rounds at an apparently unarmed Lowe who appeared to be doing nothing more provocative that walking down the street.

9.     Carter-Baird's first significant involvement with the Department of Services for Children, Youth and Their Families ("DCYF") dates back to March 28, 2019, when his school referred him to the Division of Prevention and Behavioral Health Services due to aggression in school.[32] That case was closed because it was determined that services were unnecessary at that time.[33] On September 8, 2020, Carter-Baird was arrested for Attempted Robbery First Degree and Aggravated Menacing.[34] Carter-Baird's behavior while on pretrial supervision was at times problematic, and on October 8, 2020, he was arrested for multiple counts of

---

[30] *See,* 11 Del. C. §§ 271, 272.
[31] *See* 10 *Del. C.* §1011(b)(1).
[32] State's Ex. 3, at 1 (Off. Gianforcaro's report).
[33] *Id.*
[34] *Id.*

Attempted Burglary Second Degree, Attempted Burglary Third Degree, and Conspiracy Second Degree.[35] Again, pretrial supervision proved problematic, resulting in Carter-Baird being placed at VisionQuest.[36] That placement did not go smoothly either.[37] Carter-Baird was removed from VisionQuest and detained at the New Castle County Detention Center ("NCCDC").[38] After being detained for about a month, Carter-Baird was released with a number of conditions.[39] That release did not go well, with Carter-Baird repeatedly violating the home confinement condition of his release.[40] On April 26, 2021, Carter-Baird entered no contest pleas to Attempted Theft (misdemeanor), Menacing, and Conspiracy Third Degree with sentencing deferred until June 22, 2021.[41] Due to Carter-Baird's inability to abide by the GPS and house arrest conditions of his release pending sentencing, a breach of release capias was ordered, resulting in Carter-Baird again being detained at NCCDC on May 11, 2021.[42] He was sentenced on June 6th to 12 months of community supervision with conditions.[43] Shortly into his period of community supervision, Carter-Baird was arrested for Theft of a Motor Vehicle, Disregarding a Police Officer's Signal, Driving without a Valid License, and a host of traffic

---

[35] *Id.* at 1-2.
[36] *Id.* at 3-4.
[37] *Id.* at 4.
[38] *Id.*
[39] *Id.* at 5.
[40] *Id.* at 5-7.
[41] *Id.* at 7.
[42] *Id.*
[43] *Id.*

violations.[44]  After being released on the new charges, Carter-Baird was arrested on September 27, 2021 for probation violations relating to his curfew and GPS monitoring going back to August.[45]  He was released again over his probation officer's objection on October 8th.[46]  A breach of release capias was issued on October 15th for failing to abide by the conditions of his October 8th release.[47]  In the week since his release, Carter-Baird had been suspended from school, travelled out of state without permission, and violated his curfew.[48]  He was arrested on November 1st and ordered detained yet again at NCCDC.[49]  On December 6th, Carter-Bair was adjudicated delinquent of Theft (misdemeanor) and Reckless Driving and sentenced to The Cottages, followed by 12 months of aftercare with conditions.[50]  On January 12, 2022, he was placed on an Individual Success Plan because he continued to display behavior that resulted in psychological harm to himself, his peers, and cottage staff.[51]  He was released from The Cottages on March 27, 2022 and began his period of aftercare.[52]  Carter-Baird was arrested on these charges on August 19, 2022 while on aftercare and ordered detained in default of bail.[53]

---

[44] *Id.* 8-9.
[45] *Id.* at 9.
[46] *Id.*
[47] *Id.*
[48] *Id.* at 10.
[49] *Id.*
[50] *Id.*
[51] *Id.* at 11.
[52] *Id.* at 12.
[53] *Id.*

10. Since Carted-Baird has been detained, first at NCCDC and later at Stevenson House, he has been the subject of 15 administrative interventions.[54] They include throwing a series of closed fist punches at a peer, tampering with the sprinkler in his room and flooding his toilet, refusing to lock in to his room, disrupting class, refusing to lock in requiring him to be restrained, throwing food, using profanity and being aggressive toward staff, and threating to hurt staff, requiring all available staff to use force on him.[55]

11. Both prongs of the first factor under § 1011(b) weigh heavily against transfer to Family Court. Obviously, as to the first prong concerning the nature of the present offenses, there is no more serious offense than first degree murder. As to the second prong concerning the nature and extent of Carter-Baird's prior record, Carter-Baird has been on the wrong side of the law consistently since he was 13 years of age. While the charges for which he was ultimately adjudicated delinquent are not especially serious, Carter-Baird has demonstrated a persistent inability to refrain from criminal conduct, abide by conditions of probation and release, and conform his behavior to acceptable norms while detained.

12. The second factor under § 1011(b) is the nature of past treatment and Carter-Baird's response. His response to treatment has been poor. Since his first arrest in September 2019, various modalities of treatment have been available to

---

[54] *Id.* at 13-15.
[55] *Id.*

him. They include an Individual Education Program for "on-going virtual home-schooling to prevent further disciplinary and/or behavioral issues during school,"[56] counseling with LVI Counseling & Recovery/Lifestream Behavioral Health,[57] mobile outpatient counseling from YOUR Center,[58] VisionQuest – Residential Alternate Detention,[59] twice weekly counseling sessions during his first stay at NCCDC,[60] counseling with Preventative Behavioral Health,[61] services at Snowden Cottage focusing on his criminogenic needs, including aggression and coping skills, building effective relationships and avoiding unhealthy ones, dealing more respectfully with authority, and an Individual Success Plan to deal with issues of aggression, impulse control, inappropriate language/gestures, and accountability.[62] For various reasons, including lack of compliance by Carter-Baird and his mother and an alleged incompatibility with a counselor, none of these services could be called successful. This factor favors retaining the charges in Superior Court.

13. The third factor under § 1011(b) is whether the interests of society and Carter-Baird would be better served by a trial in the Family Court or in the Superior Court. This factor also supports the Superior Court retaining jurisdiction. In weighing this factor, the Court has taken a number of considerations it considers

---

[56] *Id*. at 1.
[57] *Id.* at 2.
[58] *Id.* at 3.
[59] *Id.* at 4.
[60] *Id.* at 5.
[61] *Id.* at 7.
[62] *Id.* at 10-11.

relevant into account. Carter-Baird is now 17 years old and will be even older before a trial in Family Court could occur. Since DYRS can only provide services to him until age 19, it will be able to provide services for slightly less than 2 years at most. No services have been successful to date, despite DYRS' best efforts, since Carter-Baird was 13 years old, and the Court sees no reason to suspect any will be in the relatively short time Family Court will have available to it.

14. Accordingly, because the Court finds that all three factors it is to consider under § 1011(b) favor retention of the charges in this Court, the present charges against Xavier Carter-Baird shall be resolved in the Superior Court.[63]

**THEREFORE,** Defendant Xavier Carter-Baird's Motion for Reverse Amenability Hearing Pursuant to 10 *Del. C.* § 1011(b) is **DENIED**.

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[63] *See,* 10 *Del. C.* § 922(d).